EXHIBIT L



February 27, 2009

KITTERY POINT PARTNERS, LLC
DANIEL SYSTO
PO BOX 148
BRATTLEBORO VT 05302

Loan No:     0000296773
Prop Addr:   10 LAWRENCE LANE
             KITTERY POINT ME 03905

(the "property")

Dear Customer:

In response to your request for assistance with your financial difficulty, Bayview Loan Servicing, as holder and servicing agent for the beneficiary of record, has agreed to enter into this Delinquency Repayment Agreement, which has been prepared for your signature(s). Please read the Agreement carefully. To become effective, this Agreement must be signed and returned along with the first payment due under the Agreement.

### DELINQUENCY REPAYMENT AGREEMENT ("Agreement")

Borrower agrees to pay Bayview Loan Servicing, LLC ("Servicer") in accordance with the following schedule:

| Payment Number | Payment Amount | Payment Due Date |
|---|---|---|
| 1 | $22,000.00 | 02/27/2009 |
| 2 | $8,777.37 | 03/27/2009 |
| 3 | $8,777.37 | 04/27/2009 |
| 4 | $8,777.37 | 05/27/2009 |
| 5 | $8,777.37 | 06/27/2009 |
| 6 | $8,777.37 | 07/27/2009 |
| 7 | $8,777.37 | 08/27/2009 |
| 8 | $8,777.37 | 09/27/2009 |
| 9 | $8,777.37 | 10/27/2009 |



EXHIBIT K

Loan Id: 0000296773          Print Date: 02/27/2009                    Page 2 of 5

This agreement is subject to the following terms and conditions:

**1. Loan Documents:**

Servicer is the holder or servicing agent of that certain Promissory Note ("Note") executed by Borrower or Borrower's predecessor-in-interest on 03 / 01 / 2005, in the original principal sum of $600,000.00. The Note evidences a loan ("Loan") to Borrower, or Borrower's predecessor-in-interest and is secured by either a Deed of Trust or Mortgage ("Security Instrument"). The Security Instrument creates a secured lien on the property owned by the Borrower. The Note, Security Instrument and all other loan documents shall collectively be referred to as "Loan Documents".

**2. Amounts Due:**

The total amount due as of the date of this agreement is: $58,372.46, which consists of all payments due but unpaid, plus (if applicable) late charges, attorney/trustee fees and costs, property visitation or valuation fees, corporate advances for property taxes, insurance or other disbursements, and other fees and costs. Payment Amounts may also include estimated amounts for future payments due, advances for taxes, insurance, or other unforeseen advances, costs, or fees that may become due during the duration of this Agreement. As a result, Payment Amounts could increase as a result of these activities, or may result in a larger final payment being due at the end of this agreement. In addition, if the Loan Documents provide for periodic payment adjustments, this too may result in an increase in the Payment Amounts due during or at the end of the Agreement.

**3. Repayment Schedule:**

Borrower agrees to pay the Payment Amounts due in full on or before the Payment Dates. Time is of the essence under this Agreement. Borrower will not be provided a "grace period" for any Payment Amounts due under this Agreement. This means that Servicer must receive the monthly payments on or before the Payment Dates. However, Borrower may pre pay the Amounts Due in full at any time during the duration of the Agreement.

**4. Application of Payment Amounts:**

All funds tendered are non-refundable and may be held in a suspense/unapplied account or applied to amounts owing, solely at Servicer's discretion. Upon successful completion of this agreement, all held funds collected under this agreement shall be applied to amounts due. For income tax purposes, interest payments received will be reported for the calendar year in which the funds are actually applied as interest payments on Servicer's records.

**5. Default Status:**

During the term of this agreement: (i) The Security Instrument shall not be reinstated and the Loan shall continue to be in default under the Loan Documents; (ii) Foreclosure proceedings, if any, shall be suspended while this Agreement is in effect; (iii) Servicer may report delinquency information to outside credit bureaus; (iv) Servicer will continue to assess late charges as provided for in the Loan Documents and (v) This Agreement supersedes any other billing notices Borrower may receive from Servicer while this agreement is in effect.

**6. Termination:**

Upon default under any of the terms or conditions of this agreement or the Loan Documents, or upon Borrower's failure to maintain the property in good condition, Servicer shall have the right, at its sole discretion, to terminate this Agreement, require all unpaid amounts to be immediately due and payable, and resume Foreclosure proceedings at the point the foreclosure was previously suspended by this Agreement, if applicable.

084

App. 173

Loan Id: 0000296773         Print Date: 02/27/2009         Page 3 of 5

**7. Foreclosure Sale/Law Day:**

Borrower understands if a foreclosure sale or law day is scheduled to occur within 72 hours after Bayview Loan Servicing L.L.C. has received both the signed Forebearance Agreement and down payment, that Bayview Loan Servicing, L.L.C. may not be able to stop the sale or vesting. In this event, the down payment will be returned to the borrower and the Forbearance Agreement shall have no further force and effect. Bayview Loan Servicing L.L.C. assumes no liability for failing to 'stop' the sale or to otherwise unwind, rescind or reverse the sale or vesting should such sale or vesting occur within the time period prescribed herein. If in the event the Parties agree to undertake any effort to unwind, rescind or reverse the sale or vesting, then any attorney fees and costs resulting from such activity shall be added to the Loan delinquency.

**8. Change in Financial Condition:**

Borrower agrees that upon 30-days written notice, Bayview Loan Servicing, L.L.C. shall have the right to increase the monthly payment required under the Forbearance Agreement if Bayview Loan Servicing, L.L.C. has verified that (i) either there has been a material change in the Borrower's financial condition or that there were significant inaccuracies in the financial information last submitted by the Borrower and (ii) that the Borrower is financially able to make increased payments.

**9. Adjustable Rate Notes:**

As set forth in the terms of the Note, if the Note is an adjustable rate instrument. The monthly Forbearance Agreement payments are subject to increases based upon fluctuations in the Index rate. If there is an increase, then Bayview Loan Servicing, L.L.C. will increase the Forebearance Agreement accordingly. If there is a decrease in the Index, then Forbearance Agreements payments will not decrease and such surplus shall be applied against the Loan delinquency.

**10. Previous Discharge in Bankruptcy:**

In the event that the underlying debt has been discharged as a result of a prior bankruptcy proceeding, Bayview Loan Servicing L.L.C. hereby acknowledges that it is not assessing personal liability for the debt of the borrower(s) and that its recourse in collection matters shall be limited to the collateral described in the Security Instrument.

As further consideration, Defendent agrees that Plaintiff shall be entitled to immediate relief from the automatic stay provided by the United States Bankruptcy Code to take action to enforce all of its rights under the loan documents and this agreement in the event that Defendants take or are the subject of any action which subjects them or the property encumbered by the Plaintiff's mortgage to the provisions of section 362 of the United States Bankruptcy Code. Defendant also consents to the entry of an order setting of a bar date as to further bankruptcy filings so as to permit Plantiff to complete whatever actions it deems necessary to enforce its rights under the loan documents. Furthermore, Defendant agrees that he will not transfer title to the subject property during the pendency of this Stipulation or foreclosure action, and that any transfer was so made would be for the sole purpose of defrauding Plaintiff and for the sole purpose of frustrating Plantiff's right to proceed with any and all state court remedies.

**11. Clerical Errors:**

In the event that a clerical error in the calculation of your forebearance plan payment results in your loan not being current at the completion of this agreement, you agree that you still owe this money.

**12. No Waiver:**

Servicer's receipt and application of any funds paid under the Agreement in an amount less than the total Amounts Due shall not reinstate the Security Instrument nor cure the existing default on the Loan nor does it constitute a release of any maker or obligor from the obligations under the Loan Documents. Nothing under this agreement shall prevent Servicer from exercising its rights under the Loan Documents and applicable law in the event of any future default by the Borrower.

085

App. 174

Loan Id: 0000296773         Print Date: 02/27/2009         Page 4 of 5

**13. Assignment:**

This Agreement is not to be assigned or assumed by any successor or assign of the Borrower.

**14. Release:**

Borrower, by his/her signature hereon, agrees to the accuracy of the allegations contained in this Agreement, as well as to the authenticity and validity of each Loan Document referred to herein, and to the validity of the indebtedness described within those Loan Documents. Borrower further agrees and acknowledges that there are no defenses, set-offs or counterclaims to the indebtedness of Borrower pursuant to the Loan Documents. The provisions of this Agreement are a material inducement for Servicer's agreement to forbear from immediately exercising any and all of its remedies upon Borrower's default as referred herein and for entering into this Agreement.

Borrower releases Servicer, its subsidiaries, affiliates, agents, officers, and employees, from any and all claims, damages or liabilities of any kind existing on the date of this Agreement, which are in any way connected with the Loan, the servicing of the Loan, or events which lead up to or resulted in the Borrower entering into this Agreement. Borrower waives any rights which Borrower may have under federal or state statute or common law principle which may provide that a general release does not extend to claims which are not known to exist at the time of execution, including without limitation, California Civil Code Sec. 1542, which provides as follows: A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

**15. NO OTHER CHANGES:**

Except as expressly adjusted by this Agreement, all of the covenants, agreements, stipulations and conditions in the Loan Documents remain unmodified and in full force and effect. The Security Instrument continues to secure on a first and prior lien basis the due and punctual payments of the note, as modified by this Agreement. None of the Borrower's obligations or liabilities under the security instrument shall be diminished or released by any provisions herein. Nor shall this Agreement in any way impair, diminish, or affect any of the Borrower's rights or remedies in the Security Instrument, whether such rights or remedies arise herein or by operation of law. No oral representations have been made by any party hereto which have not been incorporated into this Agreement. Any inserted terms, changes or additions to this Agreement will immediately render it null and void. Borrower is encouraged to review this Agreement with his/her legal advisor prior to signing it, but by signing below Borrower has voluntarily signed this Agreement.

**16. ATTORNEYS' FEES AND JURY TRIAL WAIVER:**

In the event any party hereto brings suit for the collection of any damages resulting from, or the injunction of any action constituting, a breach of any terms or provisions of this Agreement or the Loan Documents, then the prevailing party shall be entitled to recover all reasonable court costs and attorneys' fees, at all levels. BORROWER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES HIS/HER RIGHTS TO A TRIAL BY JURY IN RESPECT TO ANY LITIGATION BASED HEREON OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT, THE LOAN DOCUMENTS, ANY OTHER DOCUMENTS EXECUTED OR DELIVERED IN CONNECTION HEREWITH, AND ANY AGREEMENT CONTEMPLATED TO BE EXCUTED OR DELIVERED IN CONJUNCTION HEREWITH OR ANY COURSE OF CONDUCT, COURSE OF DEALING STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY. THIS PROVISION IS A MATERIAL INDUCEMENT FOR SERVICER FORBEARING FROM ANY OTHERWISE AVAILABLE REMEDIES UPON BORROWER'S CURRENT DEFAULT.

Feb 27 09 01:07p    Austin                                    3052891122                    p.1

Loan Id: 0000296773        Print Date: 02/27/2009                    Page 5 of 5

Dated this 27th day of February, 2009

IN WITNESS WHEREOF, Servicer and Borrower have executed this Agreement.

By: _____  By: _____
DANIEL SYSTO  TUDOR AUSTIN        KITTERY POINT PARTNERS, LLC

The Agreement must be signed and returned using the Overnight Mail address below or faxed to (786) 470-3574 no later then 02/26/2009, with the first payment due by 02/27/2009

Payment Remittance Information (Always include your loan number with your payment).

Payment must be made by bank check, certified funds or wire transfer, at any of the following addresses:

| Regular Mail | Overnight Mail | Western Union Quick Collect |
|---|---|---|
| Bayview Loan Servicing, LLC | Bayview Loan Servicing | Code City: BFTG |
| PO BOX 3042 | Attn: Paul Muir | Code State: FL |
| Milwaukee WI 53201-3042 | 4425 Ponce de Leon Blvd, 5th Floor | Re: Loan # 0000296773 |
|  | Re: Loan # 0000296773 | Attn: Paul Muir |
|  | Coral Gables, Florida 33146 |  |

This letter is an attempt to collect a debt. Any information obtained will be used for that purpose.

If you have any questions regarding this matter, please contact the undersigned.

Sincerely,

Paul Muir
Phone Number: 1-(877) 406-7539
Fax Number: 1-(786) 470-3574

Bayview Loan Servicing 4425 Ponce de Leon Blvd Coral Gables, FL 33146

02/27/2009  1:07PM

087

App. 176