**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| In re: ) | |
| ) | |
| **KITTERY POINT PARTNERS, LLC,** ) | **Chapter 11** |
| ) | **Case No. 17-20316** |
| Debtor. ) | |

**DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION (REV.)**
**DATED SEPTEMBER 6, 2018**

The above-captioned debtor, **Kittery Point Partners, LLC** (the "Debtor" or "KPP"), proposes this Second Amended Plan of Reorganization (Rev.) dated September 6, 2018 pursuant to 11 U.S.C § 1121 of the Bankruptcy Code (the "Amended Plan").

**INTRODUCTION**

On June 22, 2017 (the "Filing Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, thereby initiating the Chapter 11 case of the Debtor. As a result of the filing, the Debtor became a debtor-in-possession with authority to operate its business pursuant to §§ 1107 and 1108 of the Code.

The Debtor is a Delaware limited liability company engaged in the business of owning and operating certain real property located in Kittery Point, Maine (the "Real Estate"). This Plan provides for the settlement and satisfaction by the Debtor of all Classes of Claims identified in the Plan in the amounts and over the timeframes set forth herein. Without limiting the generality of the foregoing, the Plan will (a) continue payment in the ordinary course of the obligations owed to Wells Fargo under a first priority mortgage on the Real Estate and on the pre-petition terms for payment; and (b) pay, in accordance with the provisions of this Plan, any additional indebtedness determined by final order of the Bankruptcy Court to be valid, enforceable and secured by a subordinate mortgage on the Real Estate held by Bayview Loan Servicing, LLC ("Bayview") and/or M&T Mortgage Corporation ("M&T"). The satisfaction, and in the case of Bayview and M&T, the determination and/or restructuring of this alleged debt, and the preservation of the Debtor's going concern value for the benefit of all creditors and parties-in-interest are the primary objectives of the Debtor's Chapter 11 case, and this Plan. The Plan also describes the means by which the Debtor intends to satisfy its obligations under the Plan. In summary, the Debtor will utilize revenue derived from rental of the Real Estate as well as equity investments from the Debtor's members on a going forward basis to fund payments required to be made on the Effective Date of this Plan and thereafter.

Reference is made to the provisions of Articles III, IV, V, VI, VII, and VIII of this Plan for a more detailed statement of the terms of settlement and satisfaction of all Classes of Claims, and the means for doing so.

The Debtor believes that the Plan provides for the fair and equitable treatment of all creditor Claims and that the Plan is in the best interest of all creditors, and other parties-in-interest.

## *ARTICLE I*

## **DEFINITIONS**

General. Unless the context otherwise requires and/or unless defined elsewhere in the Plan, the following terms shall have the following meanings when used in initially capitalized form in this Plan. Such meanings shall be equally applicable to both the singular and plural forms of such terms. Any term used in initially capitalized form in this Plan that is not defined herein but that is defined in the Bankruptcy Code shall have the meaning assigned to such term in the Bankruptcy Code.

1.1   Administrative Claim shall mean a Claim arising and allowable under § 503(b) of the Bankruptcy Code with respect to the Debtor, including charges against the Debtor's estate under 28 U.S.C. § 1930.

1.2   Adversary Proceeding shall mean the adversary proceeding styled *Kittery Point Partners, LLC v. Todd Enright & Bayview Loan Servicing LLC*, currently pending before the Bankruptcy Court at docket number 17-2065.

1.3   Allowed with respect to a Claim or Interest other than a Fee Claim, shall mean any Claim or Interest (a) that is the subject of a timely filed proof of claim, or (b) any Claim or Interest that has been listed in the schedules filed with the Bankruptcy Court by the Debtor pursuant to Bankruptcy Code § 521 and is not listed therein as disputed, unliquidated, or contingent; and, in each such case as to which either (i) no objection to the allowance thereof or other similar pleading has been filed within the applicable time period set forth in the Plan, or (ii) an objection or other similar pleading has been filed and the Claim or Interest has been allowed by a Final Order but only to the extent so allowed. To the extent that all or a portion of a Claim is not Allowed, the holder of such Claim shall not receive any distribution on account of the portion of such Claim that is not Allowed.

1.4   Allowed Amount shall mean the amount of any Allowed Claim or Allowed Interest.

1.5   Assets means all property that would be property of the Debtor and the Debtor's estate under § 541 of the Bankruptcy Code, whether such property is now existing or hereafter arising or acquired and wherever located including, without limitation, all Causes of Action and all proceeds of and recoveries on Causes of Action, all accounts, contract rights, chattel paper,

    general intangibles, instruments, securities, furniture, fixtures, machinery, equipment, inventory, intellectual property, domain names, and interest in real estate.

1.6    <u>Bankruptcy Code</u> shall mean 11 U.S.C. §§ 101 *et seq.*, as in effect with respect to the Case on the Petition Date. All Code references herein are to the Bankruptcy Code in effect as of the Petition Date, unless otherwise stated.

1.7    <u>Bankruptcy Court</u> shall mean the United States Bankruptcy Court for the District of Maine, or any other court with jurisdiction over the Case.

1.8    <u>Bar Date</u> shall mean the date, if any, established by the Bankruptcy Court as the deadline for filing proofs of claims or interests in the Case.

1.9    <u>Bayview</u> shall mean Bayview Loan Servicing LLC and its affiliates, successors, agents, and assigns (including, but not limited to M&T).

1.10    <u>Case</u> shall mean the Chapter 11 Case of the Debtor now pending in the Bankruptcy Court pursuant to Chapter 11 of the Bankruptcy Code.

1.11    <u>Cash</u> shall mean payment, including by check, issued by or on behalf of the Debtor with respect to any payment of collected funds required to be made pursuant to the Plan.

1.12    <u>Cause of Action</u> shall mean all claims and causes of action now owned or hereafter acquired by the Debtor and/or its estate, whether arising under the Bankruptcy Code or other federal or state law, including, without limitation, Chapter 5 Causes of Action (including those being asserted by the Debtor in the Adversary Proceeding)

1.13    <u>Chapter 5 Causes of Action</u> shall mean all Causes of Action (as that term is defined *infra* at §1.11 arising under Chapter 5 of the Bankruptcy Code (including, but not limited to, causes of action arising under 11 U.S.C. §§ 544, 547, 548, 549, 550, and 553).

1.14    <u>Claim</u> shall mean a claim, as defined in § 101(5) of the Bankruptcy Code, against the Debtor.

1.15    [reserved]

1.16    <u>Confirmation Date</u> shall mean the date on which the Confirmation Order is entered on the docket of the Bankruptcy Court.

1.17 Confirmation Order shall mean the Order (which need not be a Final Order) confirming the Plan pursuant to § 1129 of the Bankruptcy Code.

1.18 Effective Date shall mean the date determined in accordance with Article VI of the Plan.

1.19 Encumbrances shall mean all liens, encumbrances, mortgages, hypothecations, pledges, and security interests of any kind whatsoever.

1.20 Enright shall mean Todd M. Enright and his affiliates, successors, agents, and assigns.

1.21 Executory Contract shall mean an executory contract within the meaning of § 365 of the Bankruptcy Code.

1.22 Fee Claim shall mean the Administrative Claim of a professional person for compensation and/or reimbursement of expenses.

1.23 Final Order shall mean an Order of any court, administrative agency or other tribunal as entered on its docket as to which (a) the time to appeal or petition for rehearing or *certiorari* has expired and as to which no appeal or motion for rehearing or petition for *certiorari* has been timely filed or taken, (b) if such an appeal or motion for rehearing or petition for *certiorari* has been timely filed or taken, such order or judgment has been affirmed by the highest tribunal in which review was sought or such appeal, motion for rehearing or petition for *certiorari* was dismissed or otherwise terminated without modification of such order or judgment, and the time has expired within which any further proceeding for review may be commenced.

1.24 MEP shall mean Middlebury Equity Partners, its affiliates, successors, agents and assigns.

1.25 Order shall mean an order of the Bankruptcy Court.

1.26 Petition Date shall mean June 22, 2017.

1.27 Plan shall mean this Second Amended Plan of Reorganization (Rev.), dated September 6, 2018, as it may be amended or modified by the Debtor from time to time (or such other plan as the Court may order or the Debtor may agree upon with the relevant parties-in-interest), together with all exhibits, schedules and other attachments hereto, as the same may be amended or modified by the Debtor from time to time (or such other plan as the Court

may order or the Debtor may agree upon with the relevant parties-in-interest), all of which are incorporated herein by reference.

1.28 Post-Petition Bar Date shall mean the date that is forty-five (45) days after the Effective Date.

1.29 Prime Rate shall mean the annualized rate of interest designated as the "Prime Rate" as published in the Money Rates Section of the Wall Street Journal, Eastern Edition, as of the Effective Date. If the Prime Rate shall no longer be published in the Money Rates or any other section of The Wall Street Journal, then the holder(s) of an obligation payable with interest at the Prime Rate pursuant to this Plan shall have the right, exercising reasonable judgment, to substitute a new method for determining a comparable per annum interest rate to be charged by the holder(s) and such rate of interest determined by such method shall become the Prime Rate for the purpose of this Plan and any obligation issued pursuant to this Plan.

1.30 Priority Claim shall mean an Unsecured Claim arising before the Petition Date and allowable under §§ 507(a)(2) through 507(a)(9) of the Bankruptcy Code.

1.31 Real Estate shall mean the real property located at 10 Lawrence Lane, Kittery Point, Maine and owned by the Debtor.

1.32 Secured Claim shall mean a claim that is secured by a perfected (or similarly binding) Encumbrance on any of the Debtor's assets, to the extent provided in 11 U.S.C. § 506 of the Bankruptcy Code.

1.33 Unsecured Claim shall mean a Claim which arose before the Petition Date and which is not secured by any interest in any property of the Debtor's estate, and shall include a Claim which arises from the rejection of an Executory Contract or Unexpired Lease, within the meaning of § 365 of the Bankruptcy Code; provided, however, that in order to be an Unsecured Claim, such claim must be evidenced by a proof of claim which has been timely filed by the holder of the Claim (whether or not such proof of claim has been Allowed) prior to the Bar Date, or such Claim must be described on Schedule F filed by the Debtor and not noted as unliquidated, contingent or disputed on such Schedule (whether or not such claim is deemed Allowed).

1.34 Wells Fargo shall mean Wells Fargo and its affiliates, successors, agents, and assigns.

## *ARTICLE II*

### TREATMENT OF NON-CLASSIFIED CLAIMS

2.1  Administrative Claims.  Except as otherwise provided by the Plan or as otherwise agreed between the Debtor and the holder of an Allowed Administrative Claim against the Debtor, each holder of an Allowed Administrative Claim shall be paid in full upon the later of the Effective Date and the date which is thirty (30) days after the date upon which such Administrative Claim becomes an Allowed Administrative Claim.

2.2  Priority Claims.  Except as otherwise agreed by the Debtor and the holder of an Allowed Priority Claim against the Debtor other than an Administrative Claim, the holders of such Allowed Priority Claims, shall, in the sole discretion of the Debtor, be paid either (a) in full upon the later of the Effective Date and the date which is thirty (30) days after the date upon which such Priority Claim becomes an Allowed Priority Claim; or (b) in the case of priority claims described in § 507(a)(8) of the Bankruptcy Code, pursuant to the terms of § 1129(a)(9)(C).

2.3  Bankruptcy Fees.  Any Administrative Claim for outstanding fees incurred in the Case pursuant to 28 U.S.C. § 1930(a)(6) and due and payable as of the Effective Date shall be paid in full on the Effective Date.  Thereafter, the Debtor shall pay any and all fees lawfully due and payable under 28 U.S.C. § 1930(a)(6) with respect to the Case in the ordinary course without necessity of allowance by the Court until entry of an Order closing the Case.

## *ARTICLE III*

### DESIGNATION OF CLASSES OF CLAIMS

Claims that are required or permitted to be classified under Bankruptcy Code § 1123(a)(1) are hereby classified into the following classes:

3.1  Class One shall consist of all Allowed Secured Claims of any kind or nature held by Wells Fargo.  Class One is secured by a first priority mortgage on the Real Estate.

3.2  Class Two shall consist of all Allowed Secured Claims of any kind or nature held by Bayview.  Class Two, if any amount thereof constitutes an Allowed Claim, is secured by a second priority mortgage on the Real Estate.

3.3  Class Three shall consist of the holder of all Allowed Secured Claims for municipal real estate taxes which are unpaid as of the Effective Date.

3.4  Class Four shall consist of the holders of all Allowed Unsecured Claims.

3.5     Class Five shall consist of the holders of all equity interests in and to the Debtor, including equity interests evidenced by any class of membership units issued by the Debtor.

### *ARTICLE IV*

### **TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS**

The following classes of Claims and Interests are *unimpaired* under this Plan within the meaning of §1124 of the Bankruptcy Code: Class One and Class Five.  Class Two, Class Three and Class Four are *impaired* within the meaning of § 1124 of the Bankruptcy Code and the treatment of each of these classes of Claims is set forth below:

4.1     Class One.  In full and final satisfaction of the Allowed Secured Claims in Class One, the Debtor shall perform, pay and satisfy all of his obligations to the holder of claims in Class One in the manner described in various documents evidencing those obligations.  Wells Fargo shall be secured by the same collateral which secured the Class One Claim on the Petition Date: a first-priority mortgage on the Real Estate.  Class One is unimpaired and is not entitled to vote on confirmation of the Plan.

4.2     Class Two.  In full and final satisfaction of any Allowed Claim in Class Two, the Debtor shall provide as follows:  (a) as to that portion, if any, of the Class Two Claim as to which the holder of such claim can establish, by Final Order, is due and owing to the holder of such claim by the Debtor on account of or by reason of cash or other property actually advanced to or for the account of the Debtor by the holder of such claim, or any prior holder of such claim (the "Cash Portion of Class Two"), the Debtor shall pay the amount so established in cash, on the Effective Date; and (b), as to the balance, if any, of the Allowed Claim in Class Two established by Final Order (such balance being referred to hereinafter as the "Remaining Balance of the Class Two Claim"), the Debtor shall issue to the holder thereof, a new promissory note, in replacement of any promissory note evidencing the Class Two Claim as of the Petition Date, in an amount equal to the Remaining Balance of the Class Two Claim as of the Effective Date, as determined by Final Order of the Court (the "Bayview Replacement Note").  The Bayview Replacement Note shall supersede and replace all promissory notes and other evidences of indebtedness related to the Allowed Class Two Claim,and shall call for payment of the amount thereof with annual interest at the Prime Rate in effect on the Effective Date.  Commencing with the first day of the month following the month in which the Remaining Balance of the Class Two Claim is determined by Final Order of the Court and for the twelve (12) consecutive months thereafter, interest only on the Bayview Replacement Note shall be paid at the aforesaid rate. Commencing on the first day of the month following the expiration of said twelve (12) month period, principal and interest due under the Bayview Replacement Note shall be paid in consecutive, equal monthly installments of principal and interest, with the first monthly installment being due and payable on the first day of the month following the end of the aforesaid twelve-month period, and with subsequent monthly installments being due and payable on the first day of each succeeding month.  The amount of each monthly installment payment shall be that amount sufficient to amortize the full amount of principal

and all interest due under the Bayview Replacement Note in full, in three hundred (300) consecutive monthly installments as aforesaid. Notwithstanding the foregoing, all principal, unpaid interest, and other fees and charges under the Bayview Replacement Note shall be due and payable in full on the date which is one-hundred and twenty (120) months following the date upon which payments commence under the Bayview Replacement Note. The Bayview Replacement Note shall be prepayable at any time without penalty or other fee, and shall be secured by a second priority mortgage on the Real Estate, junior to the mortgage held by the holder of the Class One claim. In the event that it is determined by Final Order that the Remaining Balance of the Class Two Claim is zero, then the payment to be made to the holder of such claim, if any, pursuant to part (a) of this Section 4.2 shall be in full and final satisfaction of the Class Two Claim. The Class Two Claim is impaired under the Plan and the holder of such Claim is entitled to vote as a class to accept or reject this Plan.

    4.3    <u>Class Three</u>. In full and final satisfaction of the Allowed Secured Claims in Class Three, the Debtor shall pay the Allowed amount thereof within ninety (90) days of the Effective Date. The Class Three Claims are impaired under the Plan and the holder of such Claims is entitled to vote as a class to accept or reject this Plan.

    4.4    <u>Class Four</u>. In full and final satisfaction of all Allowed Claims in Class Four, the holders of such Allowed Claims shall receive the payments described herein.

- (a) The Debtor shall pay 50% of each Allowed Class Three Claim (the "<u>Initial Payment</u>") on the later to occur of (i) the date which is ninety (90) days after the Effective Date; and (ii) the date upon which a given Class Three Claim becomes an Allowed Class Four Claim.

- (b) The Debtor shall pay the remaining 50% of each Allowed Class Three Claim (the "<u>Final Payment</u>") on the later to occur of the Date that is (i) one hundred and eighty (180) days after the Effective Date and (ii) the date that a given Class Four Claim becomes an Allowed Class Four Claim.

Class Four Claims are impaired under the Plan and the holders of such Claims are entitled to vote as a class to accept or reject this Plan.

    4.5    <u>Class Five</u>. All equity interests in Class Five shall be unimpaired. The holders thereof shall retain all of their legal rights and privileges in respect of such interests.

### *ARTICLE V*

### MEANS FOR EXECUTION OF THE PLAN

    5.1    The Debtor shall implement the Plan, and shall make Plan Distributions and other payments as set forth herein, to holders of Allowed Claims, using the following sources of funds:

(a) cash on hand;

8

    (b) rent generated from leases to Real Estate tenants; and/or

    (c) equity infusions from members of the Debtor as necessary.

    5.2    For the purpose of assuring equity infusions into the Debtor from Members of the Debtor, in order to enable it to meet its obligations under this Plan, such Members and the Debtor have entered into the Equity Contribution Agreement, a form of which has been provided to creditors with the Debtor's Disclosure Statement in respect of this Plan. The Confirmation Order shall constitute an order of the Bankruptcy Court approving the Equity Contribution Agreement.

    5.3    At the hearing on confirmation of this Plan, the Court shall determine the Cash Portion of Class Two.

    5.4    Upon entry of a Final Order determining the Remaining Balance of the Class Two Claim, the Debtor shall execute and deliver to the holder thereof a promissory note and mortgage of the Debtor as maker and mortgagor, in the amount of any such Remaining Balance of the Class Two Claim, as determined by such Final Order, upon the terms and conditions set forth in Section 4.2(b) of this Plan, and otherwise in customary form for second priority residential real estate debts and mortgages.

## ARTICLE VI

## THE EFFECTIVE DATE

    6.1    <u>Effective Date</u>.  Unless the Confirmation Order has been stayed prior thereto, the Effective Date shall be the thirtieth (30th) day following the Confirmation Date, provided that such date is not a weekend day or a holiday. If such date falls on a weekend date or a holiday, the Effective Date shall be the next day which is not a weekend day or a holiday.

## ARTICLE VII

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

    7.1    <u>Assumption/Rejection of Certain Executory Contracts and Unexpired Leases</u>.

    (a)    Unless the subject of a motion to assume or reject an executory contract that is pending as of the Effective Date, or unless an executory contract is dealt with by an Order of this Court entered on or prior to the Effective Date, any and all executory contracts and unexpired leases of the Debtor that were entered into prior to the Filing Date, shall be deemed assumed as of the Effective Date. If an executory contract is the subject of a motion to assume

or reject as of the Effective Date, then such executory contract shall be treated in accordance with a Final Order of the Court entered with respect to such motion, or in accordance with an agreement of the Debtor and the non-debtor party(ies) to such executory contract.

(b) To the extent that the non-Debtor party to an assumed executory contract or lease claims that the Debtor must cure any defaults and/or provide adequate assurance of future performance under the same pursuant to 11 U.S.C. § 365(b)(1)(A), then the Court shall schedule a hearing as soon as practicable after the Effective Date to determine the merits of any such claim and the means for satisfaction of any such claim.

(c) The non-Debtor party to any rejected contract or lease shall be required to file a claim for damages from such rejection in accordance with Section 7.2 hereof, and failing such filing, such claim shall be deemed disallowed.

7.2  Damages.  Any claim for damages arising from the rejection or deemed rejection of an executory contract or unexpired lease must be filed on or before thirty (30) days following the later of (i) the Effective Date, or (ii) if a motion to reject such executory contract or unexpired lease is pending on the Effective Date, upon entry of a Final Order rejecting such executory contract or unexpired lease, and, if not so filed, such claim will be deemed disallowed, discharged, and forever barred from receiving any distribution under this Plan.  All Allowed Claims arising from the rejection of executory contracts and unexpired leases shall be classified as Allowed Unsecured Claims in Class Four of the Plan.

## *ARTICLE VIII*

## **MISCELLANEOUS PROVISIONS**

8.1  Legally Binding Effect.  The provisions of the Plan shall bind all holders of Claims and Interests, whether or not they accept the Plan.

8.2  Claims Subject to Allowance.  Notwithstanding any other provision of the Plan, no distribution shall be made on account of any Claim until such Claim is Allowed.

8.3  Prepetition Claim and Amendments.  Each Claim as to which a proof of claim was required to be filed on or before the Bar Date and as to which a proof of claim was not filed on or before the Bar Date shall not under any circumstances become an Allowed Claim.  In no event shall the Allowed Amount of any Claim against the Debtor exceed the amount set forth in a proof of claim therefor filed on or before the Bar Date unless the claimant in its proof of claim expressly reserved the right to amend such proof of Claim, in which case any such amended proof of claim must be filed by the Confirmation Date.  No Order allowing or disallowing a Claim may be reconsidered, pursuant to the Bankruptcy Code Section 502(j) or otherwise, so as to increase the Allowed Amount thereof after entry of the Confirmation Order.

8.4     <u>Objections to Prepetition Claims and Interests</u>.  Claims and Interests that arose prior to the Petition Date, and which have not been scheduled by the Debtor as contingent, unliquidated or disputed, or as to which a valid proof of claim or interest has been filed on or before the Bar Date, shall be allowed in full, unless an objection to such Claim or Interest is filed on or before the date which is thirty (30) days after the Confirmation Date.  Claims that have been objected to and not allowed shall have no right to vote with respect to the acceptance or rejection of this Plan except as otherwise ordered by the Court.

8.5     <u>Bar Date for and Objection to Post-Petition Claims</u>.  Any Claim entitled to priority under Bankruptcy Code § 503(a) arising before the Confirmation Date and still outstanding 60 days thereafter, except for a Fee Claim, shall be forever barred unless it is the subject of a proof of claim filed with the Bankruptcy Court on or before the Post-Petition Bar Date.  Any Claim that is the subject of such a proof of claim shall be Allowed in full unless an objection thereto is filed within 30 days after the Post-Petition Bar Date or such other date as is provided by Order upon motion of the Debtor.

8.6     <u>Means of Cash Payment</u>.  Cash payments made pursuant to the Plan will be in United States funds, by the means agreed to by the Debtor and the respective holders of Allowed Claims, including by check or wire transfer or, in the absence of an agreement, such commercially reasonable manner as the Debtor shall reasonably determine.

8.7     <u>Debtor's Assets and Causes of Action</u>.  On the Effective Date of the Plan, all property of the Debtor's bankruptcy estate, including all Chapter 5 Causes of Action, shall vest in the Debtor, subject only to liens and encumbrances that are not discharged and that are continued in full force and effect pursuant to the terms of this Plan.  On and after the Confirmation Date, and subject to compliance with the terms of this Plan, the Debtor may, without further approval of the Bankruptcy Court, use, sell, assign, transfer, abandon, settle, or otherwise dispose of at a public or private sale any of the Debtor's Assets for the purpose of liquidating and converting such assets to cash, making distributions, and fully consummating the Plan.

8.8     <u>Discharge</u>.  Except as expressly provided otherwise in this Plan, the Debtor shall, as of the Confirmation Date, have the full benefit of the discharge provided by Bankruptcy Code Section 1141(d).  Without limiting the generality of the foregoing, and except as provided in the Plan, the Debtor shall be permanently released and discharged from all Claims liens, Encumbrances, and debts that arose before the Confirmation Date whether or not any such lien, Claim, Encumbrance or debt has been scheduled by the Debtor, a proof of claim has been filed or deemed filed, any such Claim is Allowed, or the holder of any such Claim has accepted the Plan; provided, however, that nothing herein shall release or discharge the Debtor with respect to its obligation to make the payments and to provide the other consideration which is described in this Plan.

8.9     <u>Release of Encumbrances</u>.  The entry of an order confirming this Plan shall constitute the immediate release and discharge of any contractual, statutory or judicial lien,

security interest, mortgage or other encumbrance affecting property of the estate or property of the Debtor (the "Encumbrances"), unless this Plan or the Confirmation Order requires the continuation in effect of any of such Encumbrances.  Any holder of an Encumbrance that is discharged pursuant to this Plan shall, upon request of the Debtor, execute and deliver to the Debtor such documents and agreements, in recordable form, as are reasonably necessary to cause the discharge of record of any such Encumbrance.  In the event that any such holder fails and refuses to do so, then the Debtor may cause to be recorded a discharge of such Encumbrance.

       8.10    Injunction and Stay.  Unless otherwise provided, all injunctions or stays provided for in the Case pursuant to §§ 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the close of the Case.  The entry of the Confirmation Order shall constitute a stay and injunction applicable to all persons, staying and enjoining the enforcement or attempted enforcement by any means of all liens, claims, Encumbrances, and debts discharged pursuant to Section 8.8 above.

       8.11    Modification of Confirmed Plan.  After the Confirmation Date, the Debtor may modify the Plan under Bankruptcy Code § 1127 and may remedy any defect or omission or reconcile any inconsistency in the Plan or in the Confirmation Order in such manner as may be necessary or appropriate to carry out the purposes and intent of the Plan, so long as the interests of holders of Claims and Interests are not materially and adversely affected thereby.

       8.12    Substantial Consummation.  The Plan shall be deemed to have been substantially consummated when all of the requirements of Bankruptcy Code § 1101(2) shall have been satisfied.

       8.13    Closing of Case.  The Case shall be deemed closed at such time as the Order closing the Case pursuant to Bankruptcy Code § 350 has been entered by the Bankruptcy Court on the motion of the Debtor, and the Order becomes a Final Order.

       8.14    Retained Jurisdiction.  The Bankruptcy Court shall retain jurisdiction over the Case after the Confirmation Date for the following purposes:

    (a)    to hear and determine objections to claims;

    (b)    to hear and determine any disputes arising under the Plan, its implementation and execution of any necessary documents thereunder, and any requests to amend, modify, or correct the Plan, provided that any request for modification of the Plan must be brought in compliance with Bankruptcy Code § 1127(b);

    (c)    to grant extensions of any deadlines set forth in the order confirming this Plan as may be appropriate;

  (d) to enforce all discharge provisions under the Plan, including the provisions of § 8.9 of this Article;

  (e) to review and rule upon applications for compensation of professional persons; and

  8.15 <u>Dates</u>.  Whenever the Plan requires the Debtor to make a distribution or take some other action on a particular date, such action shall be taken on the required date or as soon as practicable thereafter.

  8.16 <u>Exculpation.</u>  Neither the Debtor, nor any of its respective attorneys, consultants, advisors, and agents (acting in such capacity), shall have or incur any liability to any entity for any act taken or omitted to be taken in the formulation, preparation, dissemination, implementation, confirmation or approval of the Plan, or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the Plan; provided, however, that the provisions of this Section not affect the liability of any entity that otherwise would result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence, willful misconduct or breach of any duty of loyalty.  Any of the foregoing parties in all respects shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

  8.17 <u>Exemption from Transfer Taxes</u>.  Pursuant to § 1146(c) of the Bankruptcy Code, the assignment or surrender of any lease or sublease, or the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including the execution, delivery and recording of any deeds, bills of sale or assignments executed in connection with any disposition of assets under, in furtherance of, or in connection with the Plan shall not be subject to any stamp, real estate transfer, mortgage recording, sales, use or other similar tax.

  8.18 <u>Binding Effect</u>.  Except as otherwise provided in § 1141(d)(3) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against, or Interest in, the Debtor and its respective successors and assigns, whether or not the Claim or Interest of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.  The rights, benefits and obligations of any entity named or referred to in the Plan, whose actions may be required to effectuate the terms of the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity (including, but not limited to, any trustee appointed for the Debtor under chapters 7 or 11 of the Bankruptcy Code).

  8.19 <u>Severability</u>.  In the event that the Bankruptcy Court determines, prior to the Confirmation Date, that any provision of the Plan is invalid, void or unenforceable, the Bankruptcy Court shall, with the consent of the Debtor, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid,

void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

8.20    Headings.  Headings are utilized in the Plan for convenience and reference only and shall not constitute a part of the Plan for any other purpose.

8.21    Plan Controls.  To the extent that the Plan is inconsistent with the Disclosure Statement, the provisions of the Plan shall be controlling.

8.22    Tax Returns.  Kittery Point Partners, LLC shall remain current on its ongoing obligations to file tax returns with the Internal Revenue Service and pay its taxes as they become due. Should Kittery Point Partners, LLC fail to meet these obligations, or fail to cure any deficiencies within 30 days, the Internal Revenue Service will refer any subsequent tax debt for collection without further leave of the Bankruptcy Court.

Dated:  September 6, 2018                **KITTERY POINT PARTNERS, LLC**
                                         Debtor and Debtor-in-Possession

                                         /s/ George J. Marcus
                                         George J. Marcus
                                         David C. Johnson
                                         Katherine M. Krakowka

                                         Attorneys for the Debtor

                                         MARCUS | CLEGG
                                         One Canal Plaza
                                         Suite 600
                                         Portland, ME 04101
                                         207.828.8000
                                         bankruptcy@marcusclegg.com