**Fill in this information to identify the case:**

Debtor 1    Kittery Point Partners, LLC

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:    District of Maine

Case number    17-20316

## Official Form 410

# Proof of Claim

04/16

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**FILL in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

| Part 1: | Identify the Claim |
| --- | --- |

**1. Who is the current creditor?**

Bayview Loan Servicing, LLC
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☐ No
☒ Yes.  From whom?  Middlebury Equity Partners, LLC

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Bayview Loan Servicing, LLC
Name

4425 Ponce de Leon Blvd, 5th Floor
Number    Street

Coral Gables    FL    33146
City    State    ZIP Code

Contact phone  954-590-7623

Contact email

Where should payments to the creditor be sent? (if different)

Bayview Loan Servicing, LLC Attn Cashiering
Name

4425 Ponce De Leon Blvd, 5th Floor
Number    Street

Coral Gables    FL    33146
City    State    ZIP Code

Contact phone  954-590-7623

Contact email

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

**4. Does this claim amend one already filed?**

☐ No
☒ Yes.  Claim number on court claims registry (if known) 2       Filed on  10/18/2017
                                                                                       MM  / DD  / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☒ No
☐ Yes.  Who made the earlier filing?

---

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☐ No

☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:  6  7  7  3

**7. How much is the claim?**    $_____ 1,237,760.90 . Does this amount include interest or other charges?

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

money loaned

**9. Is all or part of the claim secured?**

☐ No

☑ Yes. The claim is secured by a lien on property.

Nature of property:

☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe:    Real estate at 10 Lawrence Ln, Kittery Point, ME 03905

Basis for perfection:    rec'd mrtge YCRD, BK 15234, PG 493/BK 15315 PG 80

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:    $_____

Amount of the claim that is secured:    $_____ 1,237,760.90

Amount of the claim that is unsecured:    $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:    $_____ 267,451.27

Annual Interest Rate (when case was filed) 14.00 %

☑ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. Amount necessary to cure any default as of the date of the petition.    $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

| | |
|---|---|
| **12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☑ No<br>☐ Yes. *Check one:*                                       **Amount entitled to priority**<br><br>☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).        $_____<br><br>☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).    $_____<br><br>☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).    $_____<br><br>☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).    $_____<br><br>☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).    $_____<br><br>☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies.    $_____<br><br>\* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment. |

---

### Part 3:   Sign Below

| | |
|---|---|
| **The person completing this proof of claim must sign and date it. FRBP 9011(b).**<br><br>If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.<br><br>**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.** | *Check the appropriate box:*<br><br>☐ I am the creditor.<br>☑ I am the creditor's attorney or authorized agent.<br>☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.<br>☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.<br><br>I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.<br><br>I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.<br><br>I declare under penalty of perjury that the foregoing is true and correct.<br><br>Executed on date   <u>11/13/2019</u><br>               MM / DD / YYYY<br><br><br>    **/s/ Andrew W. Sparks, Esq.**<br>      Signature<br><br><br>**Print the name of the person who is completing and signing this claim:**<br><br>Name         Andrew W. Sparks, Esq, (ME Bar No. 3649)<br>                First name           Middle name          Last name<br><br>Title           Attorney for<br><br>Company     Bayview Loan Servicing, LLC<br>                Identify the corporate servicer as the company if the authorized agent is a servicer.<br><br>Address       One Monument Way<br>                Number       Street<br>                Portland                 ME     04101<br>                City                     State    ZIP Code<br><br>Contact phone   207-774-0317            Email asparks@ddlaw.com |

ITEMIZATION FOR AMENDED PROOF OF CLAIM

IN RE: KITTERY POINT PARTNERS, LLC
United States Bankruptcy Court, District of Maine
Case No. 17-20316

LOAN ENDING IN 6773

| | |
|---|---|
| Principal | $550,045.37 |
| Interest (Thru June 22, 2017) | $217,296.81 |
| Default Interest(thru June 22, 2017) | $212,989.37 |
| Escrow Advances | $  8,671.06 |
| Late Charges | $  2,365.41 |
| Corporate Advances: Attorney's fees/ | |
| Property inspection fees/court costs | $248,758.29 |
| Total Debt: | $1,237,760.90 |

Arrearage:
Payment due for December 1, 2011
As of June 22, 2017: 67 Payments @ $3,991.81
Total arrearage: $267,451.27

## PROMISSORY NOTE

US $600,000.00                                               Kittery, Maine
                                                                   March 1, 2005

       **FOR VALUE RECEIVED, KITTERY POINT PARTNERS, LLC**, a Delaware limited liability company with an address of P. O. Box 148, Brattleboro, Vermont 05302 (the "Maker"), promises to pay to the order of **MIDDLEBURY EQUITY PARTNERS, LLC.**, a Delaware limited liability company with an address of P. O. Box 25, Hinsdale, New Hampshire 03451 (the "Holder"), and its successors and assigns, the principal sum of Six Hundred Thousand and No/100ths Dollars ($600,000.00).

       Interest shall accrue on the unpaid principal balance hereof at the rate of Seven percent (7%) per annum.

       The Maker will pay principal and interest by making payments every month, payable in arrears, on the first day of each month commencing on April 1, 2005 (the "Commencement Date"), at Post Office Box 25, Hinsdale, New Hampshire 03451, or any such address as the Holder shall notify the Maker. The Maker will make these payments every month until all of the principal and interest and any other charges described below that are due under this Note have been paid. The monthly payments will be applied to interest before principal. The unpaid principal hereof and any accrued but unpaid interest shall be due and payable in full on March 1, 2035 (the "Maturity Date") or such other date on which the Note is due and payable in full whether by acceleration or otherwise. To the extent not sooner paid, all remaining, principal, accrued interest, default interest, and any other unpaid fees, costs, or expenses due the Holders shall be due and payable in full on the Maturity Date. Payments under this Note are unconditionally due and payable and shall not be reduced by any right of offset or counterclaim.

       Each of the monthly payments will be and Three Thousand Nine Hundred Ninety-One and 81/100ths Dollars ($3,991.81). This amount may change subject to the provisions for default interest as contained herein.

       Payment and performance hereof is secured by a Mortgage Deed, of even date herewith (the "Mortgage") made by the Maker in favor of the Holder upon certain real property and improvements thereon located at 10 Lawrence Lane, Kittery, Maine (neither this reference to such Mortgage nor any provision thereof shall affect or impair the absolute and unconditional obligation of the Maker to pay the principal and interest on this Note as provided herein), and other collateral as the Maker may hereafter grant, execute and deliver to the holder hereof (collectively referred to herein as the "Security").

       Payment shall be deemed made when received by the Holder at Post Office Box 25, Hinsdale, New Hampshire 03451. Maker shall pay the Holder a Prepayment Penalty of two percent (2%) of any amount prepaid prior to the second anniversary of the Commencement Date.

       If any payment due hereunder shall not have been paid within ten (10) days after the same is due (without Holder having to give any notice of any monetary default to Maker); if any other material agreement, covenant, or obligation of Maker herein contained shall be in default and shall not have been fully performed within ten (10) days after written notice of default has been mailed to Maker (addressed to the last known place of business of Maker); if Maker shall be in default of any material agreement, covenant, or obligation of Maker set forth in any other document executed in connection with the execution of this Promissory Note, without limitation, the Security Agreement and Mortgages of or about even date herewith, and such default shall not have been cured or fully performed within ten (10) days after written notice of default has been mailed to Maker; if Maker shall make an assignment for the benefit of creditors, or if a voluntary or involuntary petition in bankruptcy is filed by or against any Maker hereof (not dismissed or withdrawn within sixty (60) days of such filing); if a receiver of the property of any Maker hereof be appointed; if any Maker hereof shall cease doing business; if there is a change in control of, death or dissolution of any of the Maker;

or if all or any part of the property described in the Security or interest therein is sold or transferred by Maker without Holder's prior written consent, then this Promissory Note shall automatically and without further notice be deemed in default, and the entire unpaid principal, with accrued interest shall at the option of the Holder, become immediately due and payable. Holder's failure to exercise this option shall not constitute a waiver of the right to exercise this option in the event of any subsequent default.

During all periods of time during which this Promissory Note is in default for failure to make payment to Holder as required hereunder or for any reason whatsoever, the interest rate of this Promissory Note shall be increased by seven hundred (700) basis points. Such increased interest rate shall take effect: (i) without notice to Maker if such default is on account of a monetary payment obligations, or (ii) upon notice and the expiration of a ten (10) day cure period if the default is on account of any obligation other than a monetary payment obligations. Maker shall be responsible for curing such default(s) before all respective grace periods expire and for providing unambiguous written proof to Holder that such default(s) is cured, or such default(s) shall conclusively be deemed not cured.

In addition, if any payment (including amounts due on the Maturity Date or upon acceleration) owed hereunder shall not have been paid within ten (10) days of the due date thereof, Maker agrees to pay the Holder a late charge of six percent (6%) of such payment.

Notwithstanding any other provision(s) of this Promissory Note, Holder shall have the right to charge Maker all of its reasonable and necessary out-of-pocket expenses (including but not limited to reimbursement for time incurred by Holder or Holder's agents or employers) incurred in connection with the administration and monitoring of all provisions of this Promissory Note. Maker shall pay all costs for collection of this Promissory Note, including reasonable attorneys' fees: (a) if this Promissory Note shall be referred after default to an attorney-at-law for collection or other appropriate action; (b) if an action of foreclosure shall be instituted after default on this Promissory Note; or (c) in connection with any enforcement or defense of this Promissory Note or any other document executed in connection with the execution of this Note in any action or proceeding brought by any person or entity, including Holder or Maker.

Each party who is, or may become, liable on this Promissory Note in any capacity, hereby waives presentment, demand, notice of dishonor and protest, notice of extensions, modifications or alterations of the date or terms of payment hereof, and all surety defenses in the nature thereof and further consents to all extensions or modifications of the due date and terms of payment of this Promissory Note. No delay or omission on the part of the Holder shall operate as a waiver of such right or of any other right of such party, nor shall any delay, omission or waiver on any one occasion be deemed a bar to or a waiver of the same or any other right on any future occasion.

The Holder of this Promissory Note has the right, upon any default by the Maker, to apply to any court of competent jurisdiction for a receiver of any rents, profits and/or other income relating to the Security.

In the event any monthly payment made by check is not honored by the Maker's bank for any reason whatsoever, said returned check shall incur a service charge of $50.00 to cover the processing of said payment, in addition to late charges which may be due, and the replacement thereof shall be in certified or bank funds. In the event that a monthly payment due on account of this indebtedness is returned to the Holder for insufficient funds or any other such reason(s) on more than one (1) occasion, then the Maker shall be required to make all future monthly payments by bank or certified funds. Failure to follow this procedure shall constitute an act of default hereunder.

Notwithstanding anything herein to the contrary, the total interest charged on the principal amount owing hereunder from time to time shall not exceed the maximum amount allowed by law, and Maker shall not be bound or obligated to pay any interest hereunder in excess of such amount. If and to the extent the interest on this Promissory Note or any other payment required hereunder would exceed the maximum interest allowed by law, then to such extent, the excess interest payment(s) shall be deemed a partial prepayment of principal.

– 2 –

The Holder shall have the absolute right to sell and/or assign this Promissory Note and the Security, in whole or in part, and/or to enter into one or more participation agreements concerning this Promissory Note and the Security. If Holder gives written notice of any such sale(s), assignment(s) and/or participation(s) to Maker, Maker shall make payments to such subsequent holder(s) or participant(s), as the case may be, if Maker is provided with payment information by Holder.

Wherever the context shall so require, the singular and plural shall mean each other and the masculine, feminine and neutral genders shall mean each other. This Promissory Note shall be governed by the laws of the State of Maine.

THE MAKER ACKNOWLEDGES THAT THE TRANSACTION OF WHICH THIS PROMISSORY NOTE IS A PART IS A COMMERCIAL TRANSACTION, AND HEREBY VOLUNTARILY AND KNOWINGLY WAIVES ITS RIGHT TO NOTICE AND HEARING AS ALLOWED BY LAW OR ANY STATE OR FEDERAL LAW WITH RESPECT TO ANY PREJUDGMENT REMEDY WHICH THE HOLDER MAY DESIRE TO USE. FURTHER, THE MAKER HEREBY WAIVE(S), TO THE EXTENT PERMITTED BY LAW, THE BENEFITS OF ALL VALUATION, APPRAISEMENT, HOMESTEAD EXEMPTION, STAY, REDEMPTION AND MORATORIUM LAWS, NOW IN FORCE OR WHICH MAY HEREAFTER BECOME LAW. THE MAKER HEREBY WAIVES, TO THE EXTENT PERMITTED BY LAW, THE BENEFITS OF TRIAL BY JURY, NOW IN FORCE OR WHICH MAY HEREAFTER BECOME LAW.

IN WITNESS WHEREOF, Maker has executed this Promissory Note on the date written above.

IN PRESENCE OF:

KITTERY POINT PARTNERS, LLC

Witness

By:
Name:
Duly Authorized

-3-

**Kittery Point Partners, LLC**

<u>Allonge to Promissory Note dated as of March 1, 2005</u>

      Reference is made to that certain promissory note of Kittery Point Partners, LLC dated as of March 1, 2005, in the original principal amount of Six Hundred Thousand and 00/100ths Dollars ($600,000.00), including any modifications, extensions or renewals (hereinafter the "Note"), to which this Allonge is affixed, and the undersigned hereby endorses such Note as set forth below and further acknowledges and agrees that this Allonge shall be affixed to the Note and deemed a part of the Note for all purposes.

MIDDLEBURY EQUITY PARTNERS, LLC.

By: _____
Lawrence Enright, Duly Authorized Agent

Dated at Hinsdale, New Hampshire effective as of _____, 2005.

      Pay to the order of _____,
without recourse.

MIDDLEBURY EQUITY PARTNERS, LLC.

By: _____
Lawrence Enright, Duly Authorized Agent

## MORTGAGE DEED

KNOW ALL PERSONS BY THESE PRESENTS, that KITTERY POINT PARTNERS, LLC, a Delaware limited liability company with an address of Post Office Box 148, Brattleboro, Vermont 05302 (hereafter the "Mortgagor"), in consideration of Ten and More Dollars paid to its full satisfaction by MIDDLEBURY EQUITY PARTNERS, LLC, a Delaware Limited Liability Company with a mailing address of Post Office Box 25, Hinsdale, New Hampshire 03451 (the "Mortgagee"), by these presents, does freely GIVE, GRANT, SELL, CONVEY AND CONFIRM unto the said MIDDLEBURY EQUITY PARTNERS, LLC and its successors and assigns forever, a parcel of land located at Kittery, York County, Maine, and more particularly described in Exhibit "A" attached hereto (the "Real Property"), together with all buildings and improvements now or hereafter erected thereon and all appurtenances thereto, all permits and approvals issued for or for the benefit of the Real Property and the rents, issues and profits thereof; and all apparatus, fixtures and chattels now or at any time hereafter attached to, placed in or upon, or used in connection with the Real Property (the Real Property, buildings, permits, improvements and personalty being hereinafter referred to as the "Mortgaged Property").

TO HAVE AND TO HOLD the said granted Mortgaged Property, with all the privileges and appurtenances thereof, to the said Mortgagee, to its own use and behoof forever; and the said Mortgagor, for itself and its successors and assigns, covenant with the said Mortgagee, and its successors and assigns, that until the executing of these presents, it is the sole owner of the Real Property in fee simple, and have good right and title to convey the same in manner aforesaid, that the Real Property is FREE FROM EVERY ENCUMBRANCE; and it hereby engages to WARRANT AND DEFEND the same against all lawful claims whatever, except as aforesaid.

THE CONDITION OF THIS DEED is such, that if the said Mortgagor, its successors and assigns shall well and truly pay or cause to be paid to the said Mortgagee, its successors and assigns, in accordance with the terms and conditions thereof, a certain promissory note executed by Mortgagor dated of or about even date herewith, and payable to the said Mortgagee, in the amount of Six Hundred Thousand and No/100 Dollars ($600,000.00) (the "Note") and all renewals, replacements and refinancings thereof, and all other sums due Mortgagee from Mortgagor which are presently due or become due in the future, and all other present or future obligations of Mortgagor due Mortgagee, whether direct or indirect, absolute or contingent, including without limitation any and all taxes, charges and expenses of every kind or description, legal fees and expenses paid or incurred by Mortgagee under or with respect to the Mortgaged Property, the terms of this Mortgage and any other instrument made by Mortgagor or given to Mortgagee to further secure the debt secured by this Mortgage, if Mortgagor shall keep and perform each of the covenants and agreements to be kept and performed by Mortgagor contained in this Mortgage Deed, then this Mortgage shall be null and void, otherwise to be and remain in full force and effect.

Mortgagor covenant and agree with Mortgagee as follows:

1.  Mortgagor hereby grants to Mortgagee a security interest in that portion of the Mortgaged Property to the extent it is personal property which is or may be subject to Maine Uniform Commercial Code.

2.  To pay the Note hereby secured and interest thereon, if any, as the same shall become due and payable and also any other indebtedness that may accrue to the Mortgagee under the terms of this Mortgage, or any other instrument given by Mortgagor to further secure the indebtedness hereby secured.

3.  That the Mortgagor will protect and maintain or cause to be maintained in good order, repair and condition at all times the buildings and structures now standing or hereafter erected on the Mortgaged




EXHIBIT C-1

Property, and any additions and improvements thereto, and the utility services, the parking areas and access roads, and all buildings, fixtures and equipment and articles of personal property now or hereafter used in connection with the Mortgaged Property and subject to the lien of this Mortgage, promptly replacing any of the aforesaid which may become lost, destroyed or unsuitable for use with other property of similar character.

4.    That the Mortgagor will keep or cause to be kept insured the Mortgaged Property and the interests and liabilities incident to the ownership thereof, including, without limitation, fire and casualty insurance, including extended coverage, and carry insurance against loss of rental income, and the use or occupancy of the Mortgaged Property, all as the Mortgagee may require and in manner, form, companies, sum and length of terms satisfactory to the Mortgagee; that all insurance policies are to be hold by and, to the extent of its interests, are to be for the benefit of and first payable in case of loss to the Mortgagee, and the Mortgagor shall deliver to the Mortgagee a new policy as replacement for any expiring policy at least fifteen (15) days before the date of such expiration; that all amounts recoverable under any policy are hereby assigned to the Mortgagee and in the event of a loss the amount collected may, at the election of the Mortgagee, be used in any one or more of the following ways: (a) applied upon the indebtedness secured hereby, whether such indebtedness then be matured or unmatured; (b) used to fulfill any of the covenants contained herein as the Mortgagee may determine; (c) used to replace or restore the Mortgaged Property to a condition equivalent to that which existed prior to the damage or destruction of the Mortgaged Property and satisfactory to the Mortgagee; or (d) released to the Mortgagor.   The Mortgagee is hereby irrevocably appointed by the Mortgagor as attorney of the Mortgagor to assign any policy in the event of the foreclosure of this Mortgage or other enforcement of Mortgagee's remedies for default by Mortgagor under this Mortgage.

5.    That the Mortgagor will not commit or suffer any waste of the Mortgaged Property or any violation of any law, regulation or ordinance affecting the Mortgaged Property and will not commit or suffer any demolition, removal, material alteration of any of the buildings or improvements on the Mortgaged Property without the prior written consent of the Mortgagee, which consent will not be unreasonably withheld by Mortgagee, and will not violate nor suffer the violation of any restrictions, covenants or agreements, if any, of record affecting the Mortgaged Property.

6.    To pay before the same become delinquent or before any penalty for non-payment attaches thereto all taxes, assessments and charges of every nature that may now or hereafter be levied or assessed or by reason of non-payment become a lien prior to this Mortgage, upon the Mortgaged Property or any part thereof, whether any or all of said taxes, assessments or charges be levied directly or indirectly or as excise taxes or as income taxes, and will thereupon submit to the Mortgagee such evidence of the due and punctual payment of such taxes, assessments, and charges as the Mortgagee may require.

7.    To pay all sums, which if not paid in a timely manner, may result in the imposition of a lien on the Mortgaged Property and to pay all amounts due and perform all obligations secured by any subordinate lien or mortgage, permitted by Mortgagee as hereinafter provided, on the Mortgaged Property.

8.    That if the Mortgagor shall neglect or refuse to keep or cause to be kept in good repair the property referred to above in Section 3, to replace the same as therein agreed, to maintain and pay or cause to be maintained and paid the premiums for insurance which may be required above under Section 4 or to pay and discharge or cause to be discharged all taxes of whatsoever nature, assessments and charges of every nature and to whomsoever assessed, as provided for above in Section 6, or to pay or cause to be paid the sums required by it to be paid and perform or cause to be performed the obligations required by it to be performed above in Section 7, the Mortgagee may, at its election, cause such repairs or replacements to be made, obtain such insurance or pay said taxes, assessments, charges and sums, and any amounts paid as a result thereof, together with interest thereon at the Default Rate (as defined in the Note) from the date of such payment, shall

-2-

be immediately due and payable by the Mortgagor to the Mortgagee, and until paid shall be added to and become a part of the principal debt secured hereby, and the same may be collected as a part of said principal debt in any suit hereon or upon the Note.

9.      That any and all award and awards heretofore made and hereafter to be made by any public or quasi-public authorities to the owners of the Mortgaged Property, including any award or awards for any change or changes of grade of streets affecting said Mortgaged Property, are hereby assigned to the Mortgagee, and the Mortgagee, is at his election, is hereby authorized, directed and empowered to collect and receive the proceeds of any such award and awards from the authorities making the same and to give proper receipts and acquittances therefor, and may, at the Mortgagee's election, use such proceeds in any one or more of the following ways: (a) apply the same or any part thereof to the indebtedness secured hereby, whether such indebtedness then be matured or unmatured; (b) use the same or any part thereof to fulfill any of the covenants contained herein as the Mortgagee may determine; (c) use the same or any part thereof to replace or restore the Mortgaged Property to a condition substantially equivalent to the condition of the Mortgaged Property prior to the action giving rise to the payment of the award and satisfactory to the Mortgagee; or (d) release the same to the Mortgagor.  The Mortgagor hereby covenant and agree, upon request by the Mortgagee, to make, execute and deliver any and all assignments and other instruments sufficient for the purpose of assigning the aforesaid award and awards to the Mortgagee free, clear and discharged of any and all encumbrances of any kind or nature whatsoever.

10.      That upon request Mortgagor will assign to the Mortgagee as additional security for the Note, the Mortgagor's interests in any or all leases, agreements, contracts, licenses and permits affecting the Mortgaged Property, such assignments to be made by instruments in form satisfactory to the Mortgagee and authorizing the Mortgagee in the event of foreclosure, to sell and assign said interests to the purchaser at foreclosure, but no such assignment shall be construed as a consent by the Mortgagee to any lease, agreement, contract, license or permit so assigned, or to impose upon the Mortgagee any obligation with respect thereto.

11.      That the Mortgagor will execute and deliver to the Mortgagee, in forms satisfactory to the Mortgagee, financing statements and such further assurances as the Mortgagee may from time to time reasonably consider necessary under the laws of the State of Maine to create, perfect and preserve the lien hereof upon the Mortgaged Property herein described or intended to be subject hereto and the Mortgagor authorizes the Mortgagee at the expense of the Mortgagor to cause such statements and assurances and this Mortgage Deed to be filed and refiled, recorded and re-recorded, registered and re-registered at such times and places as may be required by law to so create, perfect and preserve the lien hereof upon said Mortgaged Property.

12.      That upon any default in the payment of the indebtedness hereby secured, or in the payment of the taxes, assessments or charges aforesaid, or if waste be committed or permitted or improvements removed from the Mortgaged Property without the prior written consent of the Mortgagee, or upon any default in the performance or observance of any other covenant, term, or requirement hereunder, the entire indebtedness hereby secured shall, at the election of Mortgagee, become due and payable and this Mortgage subject to foreclosure.  The entire indebtedness secured hereby shall also become immediately due, at the election of the Mortgagee, (i)  (a) by order of a court of competent jurisdiction a receiver or liquidator or trustee of the record owner of the Mortgaged Property shall be appointed and shall not have been discharged within sixty (60) days, or if by decree of such court such owner shall be adjudicated bankrupt or insolvent and such decree shall continue to be undischarged and unstayed for thirty (30) days after the entry thereof, or if a petition to reorganize such owner pursuant to the Federal Bankruptcy Code or any other similar statute applicable to such owner as now or hereafter in effect shall be filed against such owner and shall not be dismissed within one hundred twenty (120) days after such filing; (b) if such owner shall file a petition in voluntary bankruptcy under any provision of any bankruptcy law or shall consent to the filing of any

3

bankruptcy or reorganization petition under any such law, or if (without limitation of the generality of the foregoing) such owner shall file a petition for an arrangement or to reorganize such owner pursuant to the Federal Bankruptcy Code or any other similar statute applicable to such owner, as now or hereafter in effect; (c) if such owner shall institute any proceeding for its dissolution or liquidation, or shall make an assignment for the benefit of creditors, or shall admit in writing inability to pay his or its debts generally as they become due, or shall consent to the appointment of a receiver or trustee or liquidator of such owner; (d) if any report, statement, representation or warranty made by Mortgagor to Mortgagee was not true and accurate in all material respects as of the date when made; or (e) if Mortgagor shall default in the performance of their material obligations under the Note or any lien or mortgage encumbering the Mortgaged Property, whether such lien or mortgage be subordinate or superior to this Mortgage.

13.    That whenever and as long as any default hereunder shall exist, the Mortgagee shall have, at its election, the right to declare all of the sums due Mortgagee and secured by this Mortgage to be immediately due and payable, and, subject to applicable law and 48 hours notice to Mortgagor, to enter into and take possession of all or any part of the Mortgaged Property and to use, operate, manage and control the same and conduct the business thereof and collect the rents and profits therefrom as the Mortgagee shall deem best. No such entry onto the Mortgaged Property by the Mortgagee shall be deemed to infringe upon or diminish the Mortgagor's right to redeem the Mortgaged Property or Mortgagor's equity of redemption in the Mortgaged Property under applicable law. Upon every such entry, the Mortgagee may from time to time at the expense of the Mortgagor make all such repairs, replacements, alterations, additions and improvements to the Mortgaged Property as the Mortgagee may deem proper and may exercise all rights and powers of the Mortgagor, either in its name or otherwise as the Mortgagee shall determine. All rents and profits from the Mortgaged Property collected by the Mortgagee shall be applied to pay the expenses of holding and operating the Mortgaged Property, or conducting the business thereof, of all maintenance thereof, of all repairs, replacements, alterations, additions, and improvements thereto and to make all payments which the Mortgagee may be required or may reasonably elect to make, if any, for taxes, assessments, insurance, and other proper charges upon the Mortgaged Property or any part thereof as well as charges and reasonable compensation for the services of the Mortgagee and of all persons engaged and employed in conducting the operation of the Mortgaged Property. The remainder of such rents and profits, if any, shall be applied to the payment of all sums of principal and interest then due to the Mortgagee on the debt secured hereby. Mortgagee shall have, at any time after a default has occurred, all of the rights and remedies provided at law or in equity including without limitation the right to commence or cause to be commenced proceedings in a court of competent jurisdiction to foreclose the Mortgagor's equity of redemption in the Mortgaged Property. Mortgagor shall pay Mortgagee's reasonable costs and expenses in enforcing Mortgagee's rights under this Mortgage and any instrument secured hereby including without limitation all reasonable attorneys' fees paid or incurred by Mortgagee in connection with such action. In addition, to the extent the Mortgaged Property is personal property which is or may be subject to the Maine Uniform Commercial Code (hereinafter "Collateral"), Mortgagee shall have, with respect thereto all of the rights afforded a secured creditor after default pursuant to such statute, including without limitation, the right to require Mortgagor to collect the Collateral and deliver possession of the Collateral to Mortgagee and to sell, lease or otherwise dispose of the Collateral, and for that purpose the Mortgagee may, so far as the Mortgagor can give authority therefor, enter upon any Real Property on which the Collateral may be situated and remove the same therefrom. Unless the Collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, the Mortgagee shall give the Mortgagor at least fifteen (15) days' prior written notice of the time and place of any public sale of the Collateral or of the date, time and place of the closing of a private sale of the Collateral. If, prior to the entry of judgment in a foreclosure proceeding, all arrears of required payments of interest and principal and all sums paid or advanced by the Mortgagee under any provision hereof and the reasonable and proper charges, expenses and liabilities of this Mortgage, its agents, attorneys and counsel and all other sums then payable hereunder shall be, paid or collected out of the Mortgaged Property and all defaults hereunder shall have been cured, the Mortgagee shall surrender to the Mortgagor the

-- 4 --

possession of the Mortgaged Property and thereupon the Mortgagor and the Mortgagee shall be restored to their former position and rights hereunder in respect to the Mortgaged Property, but no such surrender shall extend to or affect any subsequent default or impair any right consequent thereon. Any excess funds held by the Mortgagee after surrender of the Mortgaged Property to Mortgagor as provided herein shall be returned to the Mortgagor. Provided, however, that in the exercise by the Mortgagee of the rights hereinabove in this paragraph contained, the Mortgagee shall not be required to waive any other rights which it may have acquired by reason of any prior default of the Mortgagor, including but not limited to the right of acceleration and foreclosure, to the end that, unless the Mortgagee so elects, the Mortgagee is not required to cure past defaults with the net proceeds received from the operation of the Mortgaged Property under an exercise of the rights granted in this paragraph, but may instead elect to apply such net proceeds to the debt, as accelerated. The provisions of this paragraph are supplementary to the rights granted by law to the Mortgagee to enter upon and take possession of the Mortgaged Property or any part thereof for breach of condition of this Mortgage and to foreclose the same. Anyone dealing with the Mortgagee may rely conclusively upon a certificate by the Mortgagee that any notice of default required by this paragraph was given to the Mortgagor and that the action required of the Mortgagor to cure the default was not taken or prosecuted as provided herein, provided that such certificate is correct.

14.     That the Mortgagor shall have the right to contest by appropriate legal proceeding, but without cost or expense to the Mortgagee, the validity of any laws, ordinances, rules and regulations affecting the Mortgaged Property if compliance therewith may legally be held in abeyance without the incurrence of any charge, lien or liability against the Mortgaged Property, and the Mortgagor may postpone compliance therewith until the final determination of any such proceedings, provided they shall be prosecuted with due diligence and dispatch, and if any lien or charge is incurred, the Mortgagor may, nevertheless, make the contest and delay compliance, provided the Mortgagee is furnished with security reasonably satisfactory to it, against any loss or injury by reason of such compliance or delay.

15.     That in the event of Mortgagor's sale, conveyance, transfer or other disposition, whether voluntary or by operation of law, directly or indirectly (including, without limitation, by a sale, conveyance, transfer or other disposition of all or any shares of stock, beneficial interests, partnership interests or any other ownership interests in Mortgagor), of all or any portion of the Mortgaged Property, or of any right, title or interest therein, including, without limitation, the imposition of any mortgage, lien, encumbrance, or lease, even though it be completely subject and subordinate to this Mortgage, or the consenting to or releasing of any easement or right of way benefitting or encumbering the Mortgaged Property, without the prior written consent of the Mortgagee, which consent may be granted or withheld in the sole discretion of the Mortgagee, the Mortgagee may, at its election, declare the entire unpaid balance of the Note to be immediately due and payable, together with interest and all other sums due Mortgagee and secured by this Mortgage.

16.     That no part of the proceeds of the loan secured hereby will be used for the purpose (whether immediate, incidental or ultimate) of purchasing or carrying any margin stock, as such terms are defined in Regulation G (12 CFR part 207) of the Board of Governors of the Federal Reserve System or for the purpose of reducing or retiring any indebtedness which was originally incurred for any such purpose.

17.     For purposes of this Mortgage the term "Hazardous Materials" as used in this Mortgage shall mean any substance and/or material the manufacture, use, generation, storage, transportation or disposal of which is controlled by or subject to regulation under any Federal, state or municipal statute, rule, law, regulation, ordinance, directive, order or decision including without limitation the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended (42 U.S.C. Sections 9601 et seq.). To the best of Mortgagor's knowledge after reasonable investigation, neither Mortgagor nor any prior owner of the Mortgaged Property has disposed of, produced, treated, handled, manufactured or used, stored on or transported to or from the Mortgaged Property any Hazardous Materials in any manner which violates

-5-

federal, state or municipal laws, ordinances, rules, regulations, or policies governing the use, storage, treatment, transportation, manufacture, refinement, handling, production or disposal of Hazardous Materials. Mortgagor shall not cause or permit the Mortgaged Property to be used to generate, manufacture, refine, transport, treat, store, handle, dispose, transfer, produce or process Hazardous Materials, except in compliance with all applicable federal, state and local laws or regulations, nor shall the Mortgagor cause or permit, as a result of any intentional or unintentional act or omission on the part of Mortgagor, a release of Hazardous Materials onto the Mortgaged Property or onto any other property which is not diligently cured or corrected by Mortgagor immediately upon such occurrence.  Mortgagor shall defend, indemnify and hold harmless Mortgagee, its employees, agents, officers and directors, from and against any claims, demands, penalties, fines, liabilities, settlements, damages, costs or expenses of whatever kind or nature, know or unknown, contingent or otherwise, arising out of, or in any way related to the presence, disposal, release or threatened release of any Hazardous Materials, any personal injury (including wrongful death) or property damage (real or personal) arising out of or related to such Hazardous Materials located in, on or about the Mortgaged Property, any lawsuit brought or threatened, settlement reached, or government order relating to Hazardous Materials, and/or any violation of laws, orders, regulations, requirements or demands of government authorities, or any policies or requirements of Mortgagee, which are based upon or in any way related to such Hazardous Materials including, without limitation, costs of investigation and laboratory fees, attorney and consultant fees, court costs and litigation expenses.  In the event Mortgagee takes possession of the Mortgaged Property pursuant to the terms of this Mortgage, Mortgagor shall deliver the Mortgaged Property to Mortgagee free of any and all Hazardous Materials.

18.   In case any one or more of the provisions of this Mortgage are held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision hereof.

19.   No consent or waiver, express or implied, by the Mortgagee to or of any default by the Mortgagor shall be construed as a consent or waiver to or of any other default.  The words "Mortgagor" and "Mortgagee" used herein mean the parties named herein as such and their respective heirs, executors, administrators, successors and assigns; and all obligations of the Mortgagor hereunder and under the Note secured hereby shall be binding upon the Mortgagor and the permitted successors and assigns of the Mortgagor.

20.   This mortgage is on the STATUTORY CONDITION and upon the further condition of full and seasonable compliance of the Mortgagor with all of the preceding terms, conditions, covenants and agreements, for any breach of which: (a) the Mortgagor shall be in default hereunder, (b) the Mortgagee shall have the right of foreclosure and any and all other rights and remedies given to a mortgagee and secured party under the law of Maine, this Mortgage and any document it secures; and, (c) the Mortgagee and its successors and assigns shall also have the STATUTORY POWER OF SALE pursuant to applicable provisions of Titles 14 and 33 of the Maine Revised Statutes of 1964, as said statutes have been and shall be amended, and in connection therewith, Mortgagor acknowledges that this Mortgage secures a loan or loans for business, commercial or agricultural purposes.  No remedy herein conferred on the Mortgagee is intended to be exclusive of any other remedy and each and every remedy shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing.  The failure to exercise any right or remedy shall in no event be construed as a waiver or release thereof.  Any failure by the Mortgagee to insist upon strict performance by Mortgagor of any or the terms or provisions of this Mortgage shall not be deemed to be a waiver of any terms or provisions of this Mortgage and the Mortgagee shall have the right thereafter to insist upon strict performance by Mortgagor of any and all of such terms and provisions.

21.   This Mortgage and all of the instruments referred to herein and secured hereby shall be deemed to be a contract made in and governed by the laws of the State of Maine.

-- 6 --

22.    The Mortgagee may, from time to time, upon twenty-four (24) hours prior notice to Mortgagor, inspect the Mortgaged Property.

23.    All statements, representations and information provided to Mortgagee by Mortgagor in connection with the transaction, of which this Mortgage and the instruments referred to herein form a part, were true when delivered to Mortgagee and there have been no changes in the condition, financial or otherwise, of Mortgagor since the statements, representations were made and information delivered to Mortgagee, other than changes in the ordinary course of business which have not, in the aggregate, been materially adverse. There are no facts which the Mortgagor have not disclosed to the Mortgagee in writing which materially and adversely affect nor, so far as the Mortgagor can now foresee, is reasonably likely to prove to affect materially and adversely the business, operations, properties, prospects, profits or condition (financial or otherwise) of the Mortgagor or the ability of the Mortgagor to perform its obligations under the Note, this Mortgage Deed, or any instrument referred to herein.

*(Signature Appears on the Following Page)*

- 7 -

IN WITNESS WHEREOF Mortgagor has executed this Mortgage Deed as of the 1st day of March, 2005.

IN PRESENCE OF:

Rosemary LeBlanc
Witness

KITTERY POINT PARTNERS, LLC

By:
Print Name: Daniel Sysio
Duly Authorized Member By

STATE OF MAINE- NH
COUNTY OF YORK, SS.
Cheshire

At ___, in said County and State, this 27th day of April ___, 2005, personally appeared Daniel Sysio ___, and he acknowledged this instrument, by him signed, to be his free act and deed and the free act and deed of Kittery Point Partners, LLC.

Before me, Rosemary LeBlanc
Notary Public    (Seal)

Notary commission issued in Cheshire ___ County
My commission expires: ___

ROSEMARY LEBLANC
Notary Public - New Hampshire
My Commission Expires October 24, 2009

- 8 -

EXHIBIT A

A certain place or parcel of land situated in Kittery Point, in the Town of Kittery, County of York and State of Maine, consisting of land with certain buildings thereon, bounded and described as follows:

Beginning at a point on the Westerly sideline of Lawrence Lane, so-called, thence running in a Southwesterly direction by land now or formerly of Stomr G. Decatur to the Piscataqua River; thence running generally Easterly by said River in land now or formerly of William W. Howells; thence running generally Northerly by land now or formerly of William W. Howells and Lawrence Lane to the point of beginning.

-9-

## MORTGAGE DEED

KNOW ALL PERSONS BY THESE PRESENTS, that KITTERY POINT PARTNERS, LLC, a Delaware limited liability company with an address of Post Office Box 148, Brattleboro, Vermont 05302 (hereafter the "Mortgagor"), in consideration of Ten and More Dollars paid to its full satisfaction by MIDDLEBURY EQUITY PARTNERS, LLC, a Delaware Limited Liability Company with a mailing address of Post Office Box 25, Hinsdale, New Hampshire 03451 (the "Mortgagee"), by these presents, does freely GIVE, GRANT, SELL, CONVEY AND CONFIRM unto the said MIDDLEBURY EQUITY PARTNERS, LLC and its successors and assigns forever, a parcel of land located at Kittery, York County, Maine, and more particularly described in Exhibit "A" attached hereto (the "Real Property"), together with all buildings and improvements now or hereafter erected thereon and all appurtenances thereto, all permits and approvals issued to or for the benefit of the Real Property and the rents, issues and profits thereof; and all apparatus, fixtures and chattels now or at any time hereafter attached to, placed in or upon, or used in connection with the Real Property (the Real Property, buildings, permits, improvements and personalty being hereinafter referred to as the "Mortgaged Property").

TO HAVE AND TO HOLD the said granted Mortgaged Property, with all the privileges and appurtenances thereof, to the said Mortgagee, to its own use and behoof forever; and the said Mortgagor, for itself and its successors and assigns, covenant with the said Mortgagee, and its successors and assigns, that until the canceling of these presents, it is the sole owner of the Real Property in fee simple, and have good right and title to convey the same in manner aforesaid, that the Real Property is FREE FROM EVERY ENCUMBRANCE; and it hereby engages to WARRANT AND DEFEND the same against all lawful claims whatever, except as aforesaid.

THE CONDITION OF THIS DEED is such, that if the said Mortgagor, its successors and assigns shall well and truly pay or cause to be paid to the said Mortgagee, its successors and assigns, in accordance with the terms and conditions thereof, a certain promissory note executed by Mortgagor dated of or about even date herewith, and payable to the said Mortgagee, in the amount of Six Hundred Thousand and No/100 Dollars ($600,000.00) (the "Note") and all renewals, replacements and refinancings thereof, and all other sums due Mortgagee from Mortgagor which are presently due or become due in the future, and all other present or future obligations of Mortgagor due Mortgagee, whether direct or indirect, absolute or contingent, including without limitation any and all taxes, charges and expenses of every kind or description, legal fees and expenses paid or incurred by Mortgagee under or with respect to the Mortgaged Property, the terms of this Mortgage and any other instrument made by Mortgagor or given to Mortgagee to further secure the debt secured by this Mortgage, if Mortgagor shall keep and perform each of the covenants and agreements to be kept and performed by Mortgagor contained in this Mortgage Deed, then this Mortgage shall be null and void, otherwise to be and remain in full force and effect.

Mortgagor covenant and agree with Mortgagee as follows:

1. Mortgagor hereby grants to Mortgagee a security interest in that portion of the Mortgaged Property to the extent it is personal property which is or may be subject to Maine Uniform Commercial Code.

2. To pay the Note hereby secured and interest thereon, if any, as the same shall become due and payable and also any other indebtedness that may accrue to the Mortgagee under the terms of this Mortgage, or any other instrument given by Mortgagor to further secure the indebtedness hereby secured.

3. That the Mortgagor will protect and maintain or cause to be maintained in good order, repair and condition at all times the buildings and structures now standing or hereafter erected on the Mortgaged

-1-





EXHIBIT C-1

Property, and any additions and improvements thereto, and the utility services, the parking areas and access roads, and all buildings, fixtures and equipment and articles of personal property now or hereafter used in connection with the Mortgaged Property and subject to the lien of this Mortgage, promptly replacing any of the aforesaid which may become lost, destroyed or unsuitable for use with other property of similar character.

4.    That the Mortgagor will keep or cause to be kept insured the Mortgaged Property and the interests and liabilities incident to the ownership thereof, including, without limitation, fire and casualty insurance, including extended coverage, and carry insurance against loss of rental income, and the use or occupancy of the Mortgaged Property, all as the Mortgagee may require and in manner, form, companies, sums and length of terms satisfactory to the Mortgagee; that all insurance policies are to be held by and, to the extent of its interests, are to be for the benefit of and first payable in case of loss to the Mortgagee, and the Mortgagor shall deliver to the Mortgagee a new policy as replacement for any expiring policy at least fifteen (15) days before the date of such expiration; that all amounts recoverable under any policy are hereby assigned to the Mortgagee and in the event of a loss the amount collected may, at the election of the Mortgagee, be used in any one or more of the following ways:  (a) applied upon the indebtedness secured hereby, whether such indebtedness then be matured or unmatured; (b) used to fulfill any of the covenants contained herein as the Mortgagee may determine; (c) used to replace or restore the Mortgaged Property to a condition equivalent to that which existed prior to the damage or destruction of the Mortgaged Property and satisfactory to the Mortgagee; or (d) released to the Mortgagor.  The Mortgagee is hereby irrevocably appointed by the Mortgagor as attorney of the Mortgagor to assign any policy in the event of the foreclosure of this Mortgage or other enforcement of Mortgagee's remedies for default by Mortgagor under this Mortgage.

5.    That the Mortgagor will not commit or suffer any waste of the Mortgaged Property or any violation of any law, regulation or ordinance affecting the Mortgaged Property and will not commit or suffer any demolition, removal, material alteration of any of the buildings or improvements on the Mortgaged Property without the prior written consent of the Mortgagee, which consent will not be unreasonably withheld by Mortgagee, and will not violate nor suffer the violation of any restriction, covenant or agreements, if any, of record affecting the Mortgaged Property.

6.    To pay before the same become delinquent or before any penalty for non-payment attaches thereto all taxes, assessments and charges of every nature that may now or hereafter be levied or assessed or by reason of non-payment become a lien prior to this Mortgage, upon the Mortgaged Property or any part thereof, whether any or all of said taxes, assessments or charges be levied directly or indirectly or as excise taxes or as income taxes, and will thereupon submit to the Mortgagee such evidence of the due and punctual payment of such taxes, assessments, and charges as the Mortgagee may require.

7.    To pay all sums, which if not paid in a timely manner, may result in the imposition of a lien on the Mortgaged Property and to pay all amounts due and perform all obligations secured by any subordinate lien or mortgage, permitted by Mortgagee or hereinafter provided, on the Mortgaged Property.

8.    That if the Mortgagor shall neglect or refuse to keep or cause to be kept in good repair the property referred to above in Section 3, to replace the same as therein agreed, to maintain and pay or cause to be maintained and paid the premiums for insurance which may be required above under Section 4 or to pay and discharge or cause to be discharged all taxes of whatsoever nature, assessments and charges of every nature and to whomsoever assessed, as provided for above in Section 6, or to pay or cause to be paid the sums required by it to be paid and perform or cause to be performed the obligations required by it to be performed above in Section 7, the Mortgagee may, at its election, cause such repairs or replacements to be made, obtain such insurance or pay said taxes, assessments, charges and sums, and any amounts paid as a result thereof, together with interest thereon at the Default Rate (as defined in the Note) from the date of such payment, shall

- 2 -

be immediately due and payable by the Mortgagor to the Mortgagee, and until paid shall be added to and become a part of the principal debt secured hereby, and the same may be collected as a part of said principal debt in any suit hereon or upon the Note.

9.    That any and all award and awards heretofore made and hereafter to be made by any public or quasi-public authorities to the owners of the Mortgaged Property, including any award or awards for any change or changes of grade of streets affecting said Mortgaged Property, are hereby assigned to the Mortgagee, and the Mortgagee, at its election, is hereby authorized, directed and empowered to collect and receive the proceeds of any such award and awards from the authorities making the same and to give proper receipts and acquittances therefor, and may, at the Mortgagee's election, use such proceeds in any one or more of the following ways: (a) apply the same or any part thereof to the indebtedness secured hereby, whether such indebtedness then be matured or unmatured; (b) use the same or any part thereof to fulfill any of the covenants contained herein as the Mortgagee may determine; (c) use the same or any part thereof to replace or restore the Mortgaged Property to a condition substantially equivalent to the condition of the Mortgaged Property prior to the action giving rise to the payment of the award and satisfactory to the Mortgagee; or (d) release the same to the Mortgagor. The Mortgagor hereby covenant and agree, upon request by the Mortgagee, to make, execute and deliver any and all assignments and other instruments sufficient for the purpose of assigning the aforesaid award and awards to the Mortgagee free, clear and discharged of any and all encumbrances of any kind or nature whatsoever.

10.    That upon request Mortgagor will assign to the Mortgagee as additional security for the Note, the Mortgagor's interests in any or all leases, agreements, contracts, licenses and permits affecting the Mortgaged Property, such assignments to be made by instruments in form satisfactory to the Mortgagee and authorizing the Mortgagee in the event of foreclosure, to sell and assign said interests to the purchaser at foreclosure, but no such assignment shall be construed as a consent by the Mortgagee to any lease, agreement, contract, license or permit so assigned, or to impose upon the Mortgagee any obligation with respect thereto.

11.    That the Mortgagor will execute and deliver to the Mortgagee, in forms satisfactory to the Mortgagee, financing statements and such further assurances as the Mortgagee may from time to time reasonably consider necessary under the laws of the State of Maine to create, perfect and preserve the lien hereof upon the Mortgaged Property herein described or intended to be subject hereto and the Mortgagor authorizes the Mortgagee at the expense of the Mortgagor to cause such statements and assurances and this Mortgage Deed to be filed and refiled, recorded and re-recorded, registered and re-registered at such times and places as may be required by law to so create, perfect and preserve the lien hereof upon said Mortgaged Property.

12.    That upon any default in the payment of the indebtedness hereby secured, or in the payment of the taxes, assessments or charges aforesaid, or if waste be committed or permitted on or improvements removed from the Mortgaged Property without the prior written consent of the Mortgagee, or upon any default in the performance or observance of any other covenant, term, or requirement hereunder, the entire indebtedness hereby secured shall, at the election of Mortgagee, become due and payable and this Mortgage subject to foreclosure. The entire indebtedness secured hereby shall also become immediately due, at the election of the Mortgagee, if: (a) by order of a court of competent jurisdiction a receiver or liquidator or trustee of the record owner of the Mortgaged Property shall be appointed and shall not have been discharged within sixty (60) days, or if by decree of such court such owner shall be adjudicated bankrupt or insolvent and such decree shall continue to be undischarged and unstayed for thirty (30) days after the entry thereof, or if a petition to reorganize such owner pursuant to the Federal Bankruptcy Code or any other similar statute applicable to such owner as now or hereafter in effect shall be filed against such owner and shall not be dismissed within one hundred twenty (120) days after such filing; (b) if such owner shall file a petition in voluntary bankruptcy under any provision of any bankruptcy law or shall consent to the filing of any

3

bankruptcy or reorganization petition under any such law, or if (without limitation of the generality of the foregoing) such owner shall file a petition for an arrangement or to reorganize such owner pursuant to the Federal Bankruptcy Code or any other similar statute applicable to such owner, as now or hereafter in effect; (c) if such owner shall institute any proceeding for its dissolution or liquidation, or shall make an assignment for the benefit of creditors, or shall admit in writing inability to pay his or its debts generally as they become due, or shall consent to the appointment of a receiver or trustee or liquidator of such owner; (d) if any report, statement, representation or warranty made by Mortgagor to Mortgagee was not true and accurate in all material respects as of the date when made; or (e) if Mortgagor shall default in the performance of their material obligations under the Note or any lien or mortgage encumbering the Mortgaged Property, whether such lien or mortgage be subordinate or superior to this Mortgage.

13.    That whenever and as long as any default hereunder shall exist, the Mortgagee shall have, at its election, the right to declare all of the sums due Mortgagee and secured by this Mortgage to be immediately due and payable, and, subject to applicable law and 48 hours notice to Mortgagor, to enter into and take possession of all or any part of the Mortgaged Property and to use, operate, manage and control the same and conduct the business thereof and collect the rents and profits therefrom as the Mortgagee shall deem best. No such entry onto the Mortgaged Property by the Mortgagee shall be deemed to infringe upon or diminish the Mortgagor's right to redeem the Mortgaged Property or Mortgagor's equity of redemption in the Mortgaged Property under applicable law. Upon every such entry, the Mortgagee may from time to time at the expense of the Mortgagor make all such repairs, replacements, alterations, additions and improvements to the Mortgaged Property as the Mortgagee may deem proper and may exercise all rights and powers of the Mortgagor, either in its name or otherwise as the Mortgagee shall determine. All rents and profits from the Mortgaged Property collected by the Mortgagee shall be applied to pay the expenses of holding and operating the Mortgaged Property, or conducting the business thereof, of all maintenance thereof, of all repairs, replacements, alterations, additions, and improvements thereto and to make all payments which the Mortgagee may be required or may reasonably elect to make, if any, for taxes, assessments, insurance, and other proper charges upon the Mortgaged Property or any part thereof as well as change and reasonable compensation for the services of the Mortgagee and of all persons engaged and employed in conducting the operation of the Mortgaged Property. The remainder of such rents and profits, if any, shall be applied to the payment of all sums of principal and interest then due to the Mortgagee on the debt secured hereby. Mortgagee shall have, at any time after a default has occurred, all of the rights and remedies provided at law or in equity including without limitation the right to commence or cause to be commenced proceedings in a court of competent jurisdiction to foreclose the Mortgagor's equity of redemption in the Mortgaged Property. Mortgagor shall pay Mortgagee's reasonable costs and expenses in enforcing Mortgagee's rights under this Mortgage and any instrument secured hereby including without limitation all reasonable attorneys' fees paid or incurred by Mortgagee in connection with such action. In addition, to the extent the Mortgaged Property is personal property which is or may be subject to the Maine Uniform Commercial Code (hereinafter "Collateral"), Mortgagee shall have, with respect thereto all of the rights afforded a secured creditor after default pursuant to such statute, including without limitation, the right to require Mortgagor to collect the Collateral and deliver possession of the Collateral to Mortgagee and to sell, lease or otherwise dispose of the Collateral, and for that purpose the Mortgagee may, so far as the Mortgagor can give such authority therefor, enter upon any Real Property on which the Collateral may be situated and remove the same therefrom. Unless the Collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, the Mortgagee shall give the Mortgagor at least fifteen (15) days' prior written notice of the time and place of any public sale of the Collateral or of the date, time and place of the closing of a private sale of the Collateral. If, prior to the entry of judgment in a foreclosure proceeding, all arrears of required payments of interest and principal and all sums paid or advanced by the Mortgagee under any provision hereof and the reasonable and proper charges, expenses and liabilities of the Mortgagee, its agents, attorneys and counsel and all other sums then payable hereunder shall be paid or collected out of the Mortgaged Property and all defaults hereunder shall have been cured, the Mortgagee shall surrender to the Mortgagor the

- 4 -

possession of the Mortgaged Property and thereupon the Mortgagor and the Mortgagee shall be restored to their former position and rights hereunder in respect to the Mortgaged Property, but no such surrender shall extend to or affect any subsequent default or impair any right consequent thereon. Any excess funds held by the Mortgagee after surrender of the Mortgaged Property to Mortgagor as provided herein shall be returned to the Mortgagor. Provided, however, that in the exercise by the Mortgagee of the rights hereinabove in this paragraph contained, the Mortgagee shall not be required to waive any other right which it may have acquired by reason of any prior default of the Mortgagor, including but not limited to the right of acceleration and foreclosure, to the end that, unless the Mortgagee so elects, the Mortgagee is not required to cure past defaults with the net proceeds as received from the operation of the Mortgaged Property under an exercise of the rights granted in this paragraph, but may instead elect to apply such net proceeds to the debt, as accelerated. The provisions of this paragraph are supplementary to the rights granted by law to the Mortgagee to enter upon and take possession of the Mortgaged Property or any part thereof for breach of a condition of this Mortgage and to foreclose the same. Anyone dealing with the Mortgagee may rely conclusively upon a certificate by the Mortgagee that any notice of default required by this paragraph was given to the Mortgagor and that the action required of the Mortgagor to cure the default was not taken or prosecuted as provided herein, provided that such certificate is correct.

14.    That the Mortgagor shall have the right to contest by appropriate legal proceeding, but without cost or expense to the Mortgagee, the validity of any laws, ordinances, orders, rules and regulations affecting the Mortgaged Property if compliance therewith may legally be held in abeyance without the incurrence of any charge, lien or liability against the Mortgaged Property, and the Mortgagor may postpone compliance therewith until the final determination of any such proceedings, provided they shall be prosecuted with due diligence and dispatch, and if any lien or charge is incurred, the Mortgagor may, nevertheless, make the contest and delay compliance, provided the Mortgagee is furnished with security, reasonably satisfactory to it, against any loss or injury by reason of such compliance or delay.

15.    That in the event of Mortgagor's sale, conveyance, transfer or other disposition, whether voluntary or by operation of law, directly or indirectly (including, without limitation, by a sale, conveyance, transfer or other disposition of all or any shares of stock, beneficial interests, partnership interests or any other ownership interests in Mortgagor), of all or any portion of the Mortgaged Property, or of any right, title or interest therein, including, without limitation, the imposition of any mortgage, lien, encumbrance, or lease, even though it be completely subject and subordinate to this Mortgage, or the consenting to or relocation of any easement or right of way benefitting or encumbering the Mortgaged Property, without the prior written consent of the Mortgagee, which consent may be granted or withheld in the sole discretion of the Mortgagee, the Mortgagee may, at its election, declare the entire unpaid balance of this Note to be immediately due and payable, together with interest and all other sums due Mortgagee and secured by this Mortgage.

16.    That no part of the proceeds of the loan secured hereby will be used for the purpose (whether immediate, incidental or ultimate) of purchasing or carrying any margin stock, as such terms are defined in Regulation G (12 CFR part 207) of the Board of Governors of the Federal Reserve System or for the purpose of reducing or retiring any indebtedness which was originally incurred for any such purpose.

17.    For purposes of this Mortgage the term "Hazardous Materials" as used in this Mortgage shall mean any substance and/or material the manufacture, use, generation, storage, transportation or disposal of which is controlled by or subject to regulation under any Federal, state or municipal statute, rule, law, regulation, ordinance, directive, order or decision including without limitation the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended (42 U.S.C. Sections 9601 et seq.). To the best of Mortgagor's knowledge after reasonable investigation, neither Mortgagor nor any prior owner of the Mortgaged Property has disposed of, produced, treated, handled, manufactured or used, stored on or transported to or from the Mortgaged Property any Hazardous Materials in any manner which violates

-5-

federal, state or municipal laws, ordinances, rules, regulations, or policies governing the use, storage, treatment, transportation, manufacture, refinement, handling, production or disposal of Hazardous Materials. Mortgagor shall not cause or permit the Mortgaged Property to be used to generate, manufacture, refine, transport, treat, store, handle, dispose, transfer, produce or process Hazardous Materials, except in compliance with all applicable federal, state and local laws or regulations, nor shall the Mortgagor cause or permit, as a result of any intentional or unintentional act or omission on the part of Mortgagor, a release of Hazardous Materials onto the Mortgaged Property or onto any other property which is not diligently cured or corrected by Mortgagor immediately upon such occurrence. Mortgagor shall defend, indemnify and hold harmless Mortgagee, its employees, agents, officers and directors, from and against any claims, demands, penalties, fines, liabilities, settlements, damages, costs or expenses of whatever kind or nature, know or unknown, contingent or otherwise, arising out of, or in any way related to the presence, disposal, release or threatened release of any Hazardous Materials, any personal injury (including wrongful death) or property damage (real or personal) arising out of or related to such Hazardous Materials located in, on or about the Mortgaged Property, any lawsuit brought or threatened, settlement reached, or government order relating to Hazardous Materials, and/or any violation of laws, orders, regulations, requirements or demands of government authorities, or any policies or requirements of Mortgagee, which are based upon or in any way related to such Hazardous Materials including, without limitation, costs of investigation and laboratory fees, attorney and consultant fees, court costs and litigation expenses. In the event Mortgagee takes possession of the Mortgaged Property pursuant to the terms of this Mortgage, Mortgagor shall deliver the Mortgaged Property to Mortgagee free of any and all Hazardous Materials.

18.    In case any one or more of the provisions of this Mortgage are held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision hereof.

19.    No consent or waiver, express or implied, by the Mortgagee to or of any default by the Mortgagor shall be construed as a consent or waiver to or of any other default. The words "Mortgagor" and "Mortgagee" used herein mean the parties named herein as such and their respective heirs, executors, administrators, successors and assigns; and all obligations of the Mortgagor hereunder and under the Note secured hereby shall be binding upon the Mortgagor and the permitted successors and assigns of the Mortgagor.

20.    This mortgage is on the STATUTORY CONDITION and upon the further condition of full and reasonable compliance of the Mortgagor with all of the preceding terms, conditions, covenants and agreements, for any breach of which: (a) the Mortgagor shall be in default hereunder, (b) the Mortgagee shall have the right of foreclosure and any and all other rights and remedies given to a mortgagee and secured party under the law of Maine, this Mortgage and any document it secures; and, (c) the Mortgagee and its successors and assigns shall also have the STATUTORY POWER OF SALE pursuant to applicable provisions of Titles 14 and 33 of the Maine Revised Statutes of 1964, as said statutes have been and shall be amended, and in connection therewith, Mortgagor acknowledges that this Mortgage secures a loan or loans for business, commercial or agricultural purposes. No remedy herein conferred on the Mortgagee is intended to be exclusive of any other remedy and each and every remedy shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing. The failure to exercise any right or remedy shall in no event be construed as a waiver or release thereof. Any failure by the Mortgagee to insist upon strict performance by Mortgagor of any or the terms or provisions of this Mortgage shall not be deemed to be a waiver of any terms or provisions of this Mortgage and the Mortgagee shall have the right thereafter to insist upon strict performance by Mortgagor of any and all of such terms and provision.

21.    This Mortgage and all of the instruments referred to herein and secured hereby shall be deemed to be a contract made in and governed by the laws of the State of Maine.

-- 6 --

22.    The Mortgagee may, from time to time, upon twenty-four (24) hours prior notice to Mortgagor, inspect the Mortgaged Property.

23.    All statements, representations and information provided to Mortgagee by Mortgagor in connection with the transaction, of which this Mortgage and the instruments referred to herein form a part, were true when delivered to Mortgagee and there have been no changes in the condition, financial or otherwise, of Mortgagor since the statements, representations were made and information delivered to Mortgagee, other than changes in the ordinary course of business which have not, in the aggregate, been materially adverse. There are no facts which the Mortgagor have not disclosed to the Mortgagee in writing which materially and adversely affect nor, so far as the Mortgagor can now foresee, is reasonably likely to prove to affect materially and adversely the business, operations, properties, prospects, profits or condition (financial or otherwise) of the Mortgagor or the ability of the Mortgagor to perform its obligations under the Note, this Mortgage Deed, or any instrument referred to herein.

*(Signature Appears on the Following Page)*

- 7 -

IN WITNESS WHEREOF Mortgagor has executed this Mortgage Deed as of the 1st day of March, 2005.

IN PRESENCE OF:                                          KITTERY POINT PARTNERS, LLC

_Rosemary LeBlanc_                                       By: _____
Witness                                                  Print Name: Daniel Sysko
                                                         Duly Authorized Member

STATE OF MAINE  N H
COUNTY OF YORK, SS.
                    CHESHIRE

At Kittery, in said County and State, this 27th day of April_____ 2005, personally appeared Daniel Sysko___, and he acknowledged this instrument, by him signed, to be his free act and deed and the free act and deed of Kittery Point Partners, LLC.

                         Before me, _Rosemary LeBlanc_
                                    Notary Public                    (Seal)

                    Notary commission issued in _Cheshire_  County
                    My commission expires: _____
                                    ROSEMARY LELAND
                                    Notary Public - New Hampshire
                                    My Commission Expires October 24, 2009

- 8 -

EXHIBIT A

A certain place or parcel of land situated in Kittery Point, in the Town of Kittery, County of York and State of Maine, consisting of land with certain buildings thereon, bounded and described as follows:

Beginning at a point on the Westerly sideline of Lawrence Lane, so-called, thence running in a Southwesterly direction by land now or formerly of Storm G. Decatur to the Piscataqua River; thence running generally Easterly by said River in land now or formerly of William W. Howells; thence running generally Northerly by land now or formerly of William W. Howells and Lawrence Lane to the point of beginning.

-9-

Doc# 2007061655
Bk 15315  Pg 0080 - 0089
Received York SS
12/10/2007   9:47AM
Debra L. Anderson
Register of Deeds

# MORTGAGE DEED



## Record 1st

Record and Return to:
Jennifer McGovern:
Bayview Financial, L.P.
4425 Ponce De Leon Blvd., 5th Floor
Coral Gables, FL 33146

00355193607

## MORTGAGE DEED

KNOW ALL PERSONS BY THESE PRESENTS, that KITTERY POINT PARTNERS, LLC, a Delaware limited liability company with an address of Post Office Box 148, Brattleboro, Vermont 05302 (hereafter the "Mortgagor"), in consideration of Ten and More Dollars paid to its full satisfaction by MIDDLEBURY EQUITY PARTNERS, LLC, a Delaware Limited Liability Company with a mailing address of Post Office Box 25, Hinsdale, New Hampshire 03451 (the "Mortgagee"), by these presents, does freely GIVE, GRANT, SELL, CONVEY AND CONFIRM unto the said MIDDLEBURY EQUITY PARTNERS, LLC and its successors and assigns forever, a parcel of land located at Kittery, York County, Maine, and more particularly described in Exhibit "A" attached hereto (the "Real Property"), together with all buildings and improvements now or hereafter erected thereon and all appurtenances thereto, all permits and approvals issued to or for the benefit of the Real Property and the rents, issues and profits thereof; and all apparatus, fixtures and chattels now or at any time hereafter attached to, placed in or upon, or used in connection with the Real Property (the Real Property, buildings, permits, improvements and personalty being hereinafter referred to as the "Mortgaged Property").

TO HAVE AND TO HOLD the said granted Mortgaged Property, with all the privileges and appurtenances thereof, to the said Mortgagee, to its own use and behoof forever; and the said Mortgagor, for itself and its successors and assigns, covenant with the said Mortgagee, and its successors and assigns, that until the ensealing of these presents, it is the sole owner of the Real Property in fee simple, and have good right and title to convey the same in manner aforesaid, that the Real Property is FREE FROM EVERY ENCUMBRANCE; and it hereby engages to WARRANT AND DEFEND the same against all lawful claims whatever, except as aforesaid.

THE CONDITION OF THIS DEED is such, that if the said Mortgagor, its successors and assigns shall well and truly pay or cause to be paid to the said Mortgagee, its successors and assigns, in accordance with the terms and conditions thereof, a certain promissory note executed by Mortgagor dated of or about even date herewith, and payable to the said Mortgagee, in the amount of Six Hundred Thousand and No/100 Dollars ($600,000.00) (the "Note") and all renewals, replacements and refinancings thereof, and all other sums due Mortgagee from Mortgagor which are presently due or become due in the future, and all other present or future obligations of Mortgagor due Mortgagee, whether direct or indirect, absolute or contingent, including without limitation any and all taxes, charges and expenses of every kind or description, legal fees and expenses paid or incurred by Mortgagee under or with respect to the Mortgaged Property, the terms of this Mortgage and any other instrument made by Mortgagor or given to Mortgagee to further secure the debt secured by this Mortgage, if Mortgagor shall keep and perform each of the covenants and agreements to be kept and performed by Mortgagor contained in this Mortgage Deed, then this Mortgage shall be null and void, otherwise to be and remain in full force and effect.

Mortgagor covenant and agree with Mortgagee as follows:

1.    Mortgagor hereby grants to Mortgagee a security interest in that portion of the Mortgaged Property to the extent it is personal property which is or may be subject to Maine Uniform Commercial Code.

2.    To pay the Note hereby secured and interest thereon, if any, as the same shall become due and payable and also any other indebtedness that may accrue to the Mortgagee under the terms of this Mortgage, or any other instrument given by Mortgagor to further secure the indebtedness hereby secured.

3.    That the Mortgagor will protect and maintain or cause to be maintained in good order, repair and condition at all times the buildings and structures now standing or hereafter erected on the Mortgaged

-- 1 --

Property, and any additions and improvements thereto, and the utility services, the parking areas and access roads, and all buildings, fixtures and equipment and articles of personal property now or hereafter used in connection with the Mortgaged Property and subject to the lien of this Mortgage, promptly replacing any of the aforesaid which may become lost, destroyed or unsuitable for use with other property of similar character.

4. That the Mortgagor will keep or cause to be kept insured the Mortgaged Property and the interests and liabilities incident to the ownership thereof, including, without limitation, fire and casualty insurance, including extended coverage, and carry insurance against loss of rental income, and the use or occupancy of the Mortgaged Property, all as the Mortgagee may require and in manner, form, companies, sum and length of terms satisfactory to the Mortgagee; that all insurance policies are to be held by and, to the extent of its interests, are to be for the benefit of and first payable in case of loss to the Mortgagee, and the Mortgagor shall deliver to the Mortgagee a new policy as replacement for any expiring policy at least fifteen (15) days before the date of such expiration; that all amounts recoverable under any policy are hereby assigned to the Mortgagee and in the event of a loss the amount collected may, at the election of the Mortgagee, be used in any one or more of the following ways: (a) applied upon the indebtedness secured hereby, whether such indebtedness then be matured or unmatured; (b) used to fulfill any of the covenants contained herein as the Mortgagee may determine; (c) used to replace or restore the Mortgaged Property to a condition equivalent to that which existed prior to the damage or destruction of the Mortgaged Property and satisfactory to the Mortgagee; or (d) released to the Mortgagor. The Mortgagee is hereby irrevocably appointed by the Mortgagor as attorney of the Mortgagor to assign any policy in the event of the foreclosure of this Mortgage or other enforcement of Mortgagee's remedies for default by Mortgagor under this Mortgage.

5. That the Mortgagor will not commit or suffer any waste of the Mortgaged Property or any violation of any law, regulation or ordinance affecting the Mortgaged Property and will not commit or suffer any demolition, removal, material alteration of any of the buildings or improvements on the Mortgaged Property without the prior written consent of the Mortgagee, which consent will not be unreasonably withheld by Mortgagee, and will not violate nor suffer the violation of any restrictions, covenants or agreements, if any, of record affecting the Mortgaged Property.

6. To pay before the same become delinquent or before any penalty for non-payment attaches thereto all taxes, assessments and charges of every nature that may now or hereafter be levied or assessed or by reason of non-payment become a lien prior to this Mortgage, upon the Mortgaged Property or any part thereof, whether any or all of said taxes, assessments or charges be levied directly or indirectly or as excise taxes or as income taxes, and will thereupon submit to the Mortgagee such evidence of the due and punctual payment of such taxes, assessments, and charges as the Mortgagee may require.

7. To pay all sums, which if not paid in a timely manner, may result in the imposition of a lien on the Mortgaged Property and to pay all amounts due and perform all obligations secured by any subordinate lien or mortgage, permitted by Mortgagee as hereinafter provided, on the Mortgaged Property.

8. That if the Mortgagor shall neglect or refuse to keep or cause to be kept in good repair the property referred to above in Section 3, to replace the same as therein agreed, to maintain and pay or cause to be maintained and paid the premiums for insurance which may be required above under Section 4 or to pay and discharge or cause to be discharged all taxes of whatsoever nature, assessments and charges of every nature and to whomever assessed, as provided for above in Section 6, or to pay or cause to be paid the sums required by it to be paid and perform or cause to be performed the obligations required by it to be performed above in Section 7, the Mortgagee may, at its election, cause such repairs or replacements to be made, obtain such insurance or pay said taxes, assessments, charges and sums, and any amounts paid as a result thereof, together with interest thereon at the Default Rate (as defined in the Note) from the date of such payment, shall

-2-

be immediately due and payable by the Mortgagor to the Mortgagee, and until paid shall be added to and become a part of the principal debt secured hereby, and the same may be collected as a part of said principal debt in any suit hereon or upon the Note.

9.    That any and all award and awards heretofore made and hereafter to be made by any public or quasi-public authorities to the owners of the Mortgaged Property, including any award or awards for any change or changes of grade of streets affecting said Mortgaged Property, are hereby assigned to the Mortgagee, and the Mortgagee, at its election, is hereby authorized, directed and empowered to collect and receive the proceeds of any such award and awards from the authorities making the same and to give proper receipts and acquittances therefor, and may, at the Mortgagee's election, use such proceeds in any one or more of the following ways: (a) apply the same or any part thereof to the indebtedness secured hereby, whether such indebtedness then be matured or unmatured; (b) use the same or any part thereof to fulfill any of the covenants contained herein as the Mortgagee may determine; (c) use the same or any part thereof to replace or restore the Mortgaged Property to a condition substantially equivalent to the condition of the Mortgaged Property prior to the action giving rise to the payment of the award and satisfactory to the Mortgagee; or (d) release the same to the Mortgagor.    The Mortgagor hereby covenant and agree, upon request by the Mortgagee, to make, execute and deliver any and all assignments and other instruments sufficient for the purpose of assigning the aforesaid award and awards to the Mortgagee free, clear and discharged of any and all encumbrances of any kind or nature whatsoever.

10.    That upon request Mortgagor will assign to the Mortgagee as additional security for the Note, the Mortgagor's interests in any or all leases, agreements, contracts, licenses and permits affecting the Mortgaged Property, such assignments to be made by instruments in form satisfactory to the Mortgagee and authorizing the Mortgagee in the event of foreclosure, to sell and assign said interests to the purchaser at foreclosure, but no such assignment shall be construed as a consent by the Mortgagee to any lease, agreement, contract, license or permit so assigned, or to impose upon the Mortgagee any obligation with respect thereto.

11.    That the Mortgagor will execute and deliver to the Mortgagee, in forms satisfactory to the Mortgagee, financing statements and such further assurances as the Mortgagee may from time to time reasonably consider necessary under the laws of the State of Maine to create, perfect and preserve the lien hereof upon the Mortgaged Property herein described or intended to be subject hereto and the Mortgagor authorize the Mortgagee at the expense of the Mortgagor to cause such statements and assurances and this Mortgage Deed to be filed and refiled, recorded and re-recorded, registered and re-registered at such times and places as may be required by law to so create, perfect and preserve the lien hereof upon said Mortgaged Property.

12.    That upon any default in the payment of the indebtedness hereby secured, or in the payment of the taxes, assessments or charges aforesaid, or if waste be committed or permitted on or improvements removed from the Mortgaged Property without the prior written consent of the Mortgagee, or upon any default in the performance or observance of any other covenant, term, or requirement hereunder, the entire indebtedness hereby secured shall, at the election of Mortgagee, become due and payable and this Mortgage subject to foreclosure.   The entire indebtedness secured hereby shall also become immediately due, at the election of the Mortgagee, if: (a) by order of a court of competent jurisdiction a receiver or liquidator or trustee of the record owner of the Mortgaged Property shall be appointed and shall not have been discharged within sixty (60) days, or if by decree of such court such owner shall be adjudicated bankrupt or insolvent and such decree shall continue to be undischarged and unstayed for thirty (30) days after the entry thereof, or if a petition to reorganize such owner pursuant to the Federal Bankruptcy Code or any other similar statute applicable to such owner as now or hereafter in effect shall be filed against such owner and shall not be dismissed within one hundred twenty (120) days after such filing; (b) if such owner shall file a petition in voluntary bankruptcy under any provision of any bankruptcy law or shall consent to the filing of any

– 3 –

bankruptcy or reorganization petition under any such law, or if (without limitation of the generality of the foregoing) such owner shall file a petition for an arrangement or to reorganize such owner pursuant to the Federal Bankruptcy Code or any other similar statute applicable to such owner, as now or hereafter in effect; (c) if such owner shall institute any proceeding for its dissolution or liquidation, or shall make an assignment for the benefit of creditors, or shall admit in writing inability to pay his or its debts generally as they become due, or shall consent to the appointment of a receiver or trustee or liquidator of such owner; (d) if any report, statement, representation or warranty made by Mortgagor to Mortgagee was not true and accurate in all material respects as of the date when made; or (e) if Mortgagor shall default in the performance of their material obligations under the Note or any lien or mortgage encumbering the Mortgaged Property, whether such lien or mortgage be subordinate or superior to this Mortgage.

13.    That whenever and as long as any default hereunder shall exist, the Mortgagee shall have, at its election, the right to declare all of the sums due Mortgagee and secured by this Mortgage to be immediately due and payable, and, subject to applicable law and 48 hours notice to Mortgagor, to enter into and take possession of all or any part of the Mortgaged Property and to use, operate, manage and control the same and conduct the business thereof and collect the rents and profits therefrom as the Mortgagee shall deem best. No such entry onto the Mortgaged Property by the Mortgagee shall be deemed to infringe upon or diminish the Mortgagor's right to redeem the Mortgaged Property or Mortgagor's equity of redemption in the Mortgaged Property under applicable law. Upon every such entry, the Mortgagee may from time to time at the expense of the Mortgagor make all such repairs, replacements, alterations, additions and improvements to the Mortgaged Property as the Mortgagee may deem proper and may exercise all rights and powers of the Mortgagor, either in its name or otherwise as the Mortgagee shall determine. All rents and profits from the Mortgaged Property collected by the Mortgagee shall be applied to pay the expense of holding and operating the Mortgaged Property, or conducting the business thereof, of all maintenance thereof, of all repairs, replacements, alterations, additions, and improvements thereto and to make all payments which the Mortgagee may be required or may reasonably elect to make, if any, for taxes, assessments, insurance, and other proper charges upon the Mortgaged Property or any part thereof as well as charges and reasonable compensation for the services of the Mortgagee and of all persons engaged and employed in conducting the operation of the Mortgaged Property. The remainder of such rents and profits, if any, shall be applied to the payment of all sums of principal and interest then due to the Mortgagee on the debt secured hereby. Mortgagee shall have, at any time after a default has occurred, all of the rights and remedies provided at law or in equity including without limitation the right to commence or cause to be commenced proceedings in a court of competent jurisdiction to foreclose the Mortgagor's equity of redemption in the Mortgaged Property. Mortgagor shall pay Mortgagee's reasonable costs and expenses in enforcing Mortgagee's rights under this Mortgage and any instrument secured hereby including without limitation all reasonable attorneys' fees paid or incurred by Mortgagee in connection with such action. In addition, to the extent the Mortgaged Property is personal property which is or may be subject to the Maine Uniform Commercial Code (hereinafter "Collateral"), Mortgagee shall have, with respect thereto all of the rights afforded a secured creditor after default pursuant to such statute, including without limitation, the right to require Mortgagor to collect the Collateral and deliver possession of the Collateral to Mortgagee and to sell, lease or otherwise dispose of the Collateral, and for that purpose the Mortgagee may, so far as the Mortgagor can give authority therefor, enter upon any Real Property on which the Collateral may be situated and remove the same therefrom. Unless the Collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, the Mortgagee shall give the Mortgagor at least fifteen (15) days' prior written notice of the time and place of any public sale of the Collateral or of the date, time and place of the closing of a private sale of the Collateral. If, prior to the entry of judgment in a foreclosure proceeding, all arrears of required payments of interest and principal and all sums paid or advanced by the Mortgagee under any provision hereof and the reasonable and proper charges, expenses and liabilities of the Mortgagee, its agents, attorneys and counsel and all other sums then payable hereunder shall be paid or collected out of the Mortgaged Property and all defaults hereunder shall have been cured, the Mortgagee shall surrender to the Mortgagor the

- 4 -

federal, state or municipal laws, ordinances, rules, regulations, or policies governing the use, storage, treatment, transportation, manufacture, refinement, handling, production or disposal of Hazardous Materials. Mortgagor shall not cause or permit the Mortgaged Property to be used to generate, manufacture, refine, transport, treat, store, handle, dispose, transfer, produce or process Hazardous Materials, except in compliance with all applicable federal, state and local laws or regulations, nor shall the Mortgagor cause or permit, as a result of any intentional or unintentional act or omission on the part of Mortgagor, a release of Hazardous Materials onto the Mortgaged Property or onto any other property which is not diligently cured or corrected by Mortgagor immediately upon such occurrence. Mortgagor shall defend, indemnify and hold harmless Mortgagee, its employees, agents, officers and directors, from and against any claims, demands, penalties, fines, liabilities, settlements, damages, costs or expenses of whatever kind or nature, know or unknown, contingent or otherwise, arising out of, or in any way related to the presence, disposal, release or threatened release of any Hazardous Materials, any personal injury (including wrongful death) or property damage (real or personal) arising out of or related to such Hazardous Materials located in, on or about the Mortgaged Property, any lawsuit brought or threatened, settlement reached, or government order relating to Hazardous Materials, and/or any violation of laws, orders, regulations, requirements or demands of government authorities, or any policies or requirements of Mortgagee, which are based upon or in any way related to such Hazardous Materials including, without limitation, costs of investigation and laboratory fees, attorney and consultant fees, court costs and litigation expenses. In the event Mortgagee takes possession of the Mortgaged Property pursuant to the terms of this Mortgage, Mortgagor shall deliver the Mortgaged Property to Mortgagee free of any and all Hazardous Materials.

18.    In case any one or more of the provisions of this Mortgage are held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision hereof.

19.    No consent or waiver, express or implied, by the Mortgagee to or of any default by the Mortgagor shall be construed as a consent or waiver to or of any other default. The words "Mortgagor" and "Mortgagee" used herein mean the parties named herein as such and their respective heirs, executors, administrators, successors and assigns; and all obligations of the Mortgagor hereunder and under the Note secured hereby shall be binding upon the Mortgagor and the permitted successors and assigns of the Mortgagor.

20.    This mortgage is on the STATUTORY CONDITION and upon the further condition of full and seasonable compliance of the Mortgagor with all of the preceding terms, conditions, covenants and agreements, for any breach of which: (a) the Mortgagor shall be in default hereunder, (b) the Mortgagee shall have the right of foreclosure and any and all other rights and remedies given to a mortgagee and secured party under the law of Maine, this Mortgage and any document it secures; and, (c) the Mortgagee and its successors and assigns shall also have the STATUTORY POWER OF SALE pursuant to applicable provisions of Titles 14 and 33 of the Maine Revised Statutes as said statutes have been and shall be amended, and in connection therewith, Mortgagor acknowledges that this Mortgage secures a loan or loans for business, commercial or agricultural purposes. No remedy herein conferred on the Mortgagee is intended to be exclusive of any other remedy and each and every remedy shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing. The failure to exercise any right or remedy shall in no event be construed as a waiver or release thereof. Any failure by the Mortgagee to insist upon strict performance by Mortgagor of any or the terms or provisions of this Mortgage shall not be deemed to be a waiver of any terms or provisions of this Mortgage and the Mortgagee shall have the right thereafter to insist upon strict performance by Mortgagor of any and all of such terms and provisions.

21.    This Mortgage and all of the instruments referred to herein and secured hereby shall be deemed to be a contract made in and governed by the laws of the State of Maine.

– 6 –

possession of the Mortgaged Property and thereupon the Mortgagor and the Mortgagee shall be restored to their former position and rights hereunder in respect to the Mortgaged Property, but no such surrender shall extend to or affect any subsequent default or impair any right consequent thereon. Any excess funds held by the Mortgagee after surrender of the Mortgaged Property to Mortgagor as provided herein shall be returned to the Mortgagor. Provided, however, that in the exercise by the Mortgagee of the rights hereinabove in this paragraph contained, the Mortgagee shall not be required to waive any other rights which it may have acquired by reason of any prior default of the Mortgagor, including but not limited to the right of acceleration and foreclosure, to the end that, unless the Mortgagee so elects, the Mortgagee is not required to cure past defaults with the net proceeds received from the operation of the Mortgaged Property under an exercise of the rights granted in this paragraph, but may instead elect to apply such net proceeds to the debt, as accelerated. The provisions of this paragraph are supplementary to the rights granted by law to the Mortgagee to enter upon and take possession of the Mortgaged Property or any part thereof for breach of condition of this Mortgage and to foreclose the same. Anyone dealing with the Mortgagee may rely conclusively upon a certificate by the Mortgagee that any notice of default required by this paragraph was given to the Mortgagor and that the action required of the Mortgagor to cure the default was not taken or prosecuted as provided herein, provided that such certificate is correct.

14. That the Mortgagor shall have the right to contest by appropriate legal proceeding, but without cost or expense to the Mortgagee, the validity of any laws, ordinances, orders, rules and regulations affecting the Mortgaged Property if compliance therewith may legally be held in abeyance without the incurrence of any charge, lien or liability against the Mortgaged Property, and the Mortgagor may postpone compliance therewith until the final determination of any such proceedings, provided they shall be prosecuted with due diligence and dispatch, and if any lien or charge is incurred, the Mortgagor may, nevertheless, make the contest and delay compliance, provided the Mortgagee is furnished with security, reasonably satisfactory to it, against any loss or injury by reason of such compliance or delay.

15. That in the event of Mortgagor's sale, conveyance, transfer or other disposition, whether voluntary or by operation of law, directly or indirectly (including, without limitation, by a sale, conveyance, transfer or other disposition of all or any shares of stock, beneficial interests, partnership interests or any other ownership interests in Mortgagor), of all or any portion of the Mortgaged Property, or of any right, title or interest therein, including, without limitation, the imposition of any mortgage, lien, encumbrance, or lease, even though it be completely subject and subordinate to this Mortgage, or the consenting to or relocation of any easement or right of way benefitting or encumbering the Mortgaged Property, without the prior written consent of the Mortgagee, which consent may be granted or withheld in the sole discretion of the Mortgagee, the Mortgagee may, at its election, declare the entire unpaid balance of the Note to be immediately due and payable, together with interest and all other sums due Mortgagee and secured by this Mortgage.

16. That no part of the proceeds of the loan secured hereby will be used for the purpose (whether immediate, incidental or ultimate) of purchasing or carrying any margin stock, as such terms are defined in Regulation G (12 CFR part 207) of the Board of Governors of the Federal Reserve System or for the purpose of reducing or retiring any indebtedness which was originally incurred for any such purpose.

17. For purposes of this Mortgage the term "Hazardous Materials" as used in this Mortgage shall mean any substance and/or material the manufacture, use, generation, storage, transportation or disposal of which is controlled by or subject to regulation under any Federal, state or municipal statute, rule, law, regulation, ordinance, directive, order or decision including without limitation the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended (42 U.S.C. Sections 9601 et seq.). To the best of Mortgagor's knowledge after reasonable investigation, neither Mortgagor nor any prior owner of the Mortgaged Property has disposed of, produced, treated, handled, manufactured or used, stored on or transported to or from the Mortgaged Property any Hazardous Materials in any manner which violates

– 5 –

22.    The Mortgagee may, from time to time, upon twenty-four (24) hours prior notice to Mortgagor, inspect the Mortgaged Property.

23.    All statements, representations and information provided to Mortgagee by Mortgagor in connection with the transaction, of which this Mortgage and the instruments referred to herein form a part, were true when delivered to Mortgagee and there have been no changes in the condition, financial or otherwise, of Mortgagor since the statements, representations were made and information delivered to Mortgagee, other than changes in the ordinary course of business which have not, in the aggregate, been materially adverse. There are no facts which the Mortgagor have not disclosed to the Mortgagee in writing which materially and adversely affect nor, so far as the Mortgagor can now foresee, is reasonably likely to prove to affect materially and adversely the business, operations, properties, prospects, profits or condition (financial or otherwise) of the Mortgagor or the ability of the Mortgagor to perform its obligations under the Note, this Mortgage Deed, or any instrument referred to herein.

*(Signature Appears on the Following Page)*

– 7 –

IN WITNESS WHEREOF Mortgagor has executed this Mortgage Deed as of the 1st day of March, 2005.

IN PRESENCE OF:

KITTERY POINT PARTNERS, LLC

_Rosemary LeBlanc_
Witness

Rosemary LeBlanc

By: _____
Print Name: Daniel Systo
Duly Authorized Member

STATE OF MAINE NH
COUNTY OF YORK, SS.
CHESHIRE

At Kittery, in said County and State, this 27th day of April, 2005, personally appeared Daniel Systo, and he acknowledged this instrument, by him signed, to be his free act and deed and the free act and deed of Kittery Point Partners, LLC.

Seal

Before me, _Rosemary LeBlanc_
Rosemary LeBlanc   Notary Public   (Seal)

Notary commission issued in Cheshire County
My commission expires: 10/24/2006

ROSEMARY LEBLANC
Notary Public · New Hampshire
My Commission Expires October 24, 2006

- 8 -

EXHIBIT A

A certain place or parcel of land situated in Kittery Point, in the Town of Kittery, County of York and State of Maine, consisting of land with certain buildings thereon, bounded and described as follows:

Beginning at a point on the Westerly sideline of Lawrence Lane, so-called, thence running in a Southwesterly direction by land now or formerly of Storer G. Decatur to the Piscataqua River; thence running generally Easterly by said River to land now or formerly of William W. Howells; thence running generally Northerly by land now or formerly of William W. Howells and Lawrence Lane to the point of beginning.

END OF DOCUMENT

Bk 15315   Pg 0090
Received York SS
12/10/2007    9:47AM
Debra L. Anderson
Register of Deeds

E →
jpg

Record and Return to:
Jennifer McGovern
BayView Loan Servicing, LLC
4425 Ponce de Leon Blvd., 5th Floor
Coral Gables, Florida 33146

## ASSIGNMENT OF MORTGAGE 

Know all men by these presents that **MIDDLEBURY EQUITY PARTNERS, LLC,** existing under the laws of the state of Delaware, with an address of Post Office Box 25, Hinsdale, New Hampshire, herein designated as the Assignor, for and in consideration of the sum of ONE DOLLAR and other good and valuable consideration, the receipt whereof is hereby acknowledged, does by these presents assign to   Bayview Loan Servicing, LLC  4425 Ponce de Leon Blvd., 5th Fl   Coral Gables, Fl 33146 designated as the Assignee, a certain Mortgage Deed dated 3/1/2005, made by Kittery Point Partners, LLC, on real property located at 10 Lawrence Lane, Kittery, Maine and more fully described as follows: SEE EXHIBIT "A" ATTACHED HERETO

To secure payment of the sum of Six Hundred Thousand and 00/100ths Dollars ($600,000.00) which mortgage is recorded in the clerk's office of the county of York, Maine, in Book 15315 of Mortgages on Page 80 on _____ (Recorded Simultaneously Herewith)
Original Lender : Middlebury Equity Partners, LLC

TOGETHER with the Bond, Note or other Obligation therein described, and the money due and to grow due thereon with the interest.

TO HAVE AND TO HOLD the same unto said Assignee forever, subject only to all the provisions contained in the said Mortgage and the Bond, Note or other Obligation.

IN WITNESS WHEREOF, the said Assignor has hereunto set his hand and seal or caused these presents to be signed by its proper corporate officers and its corporate seal to be hereto affixed.

IN PRESENCE OF:

MIDDLEBURY EQUITY PARTNERS, LLC.

_____
Witness
Rosemary LeBlanc

_____
Lawrence Enright, Duly Authorized Agent

STATE OF NEW HAMPSHIRE
COUNTY OF CHESHIRE

At Hinsdale, in said County and State, this 27th day of April, 2005, personally appeared **LAWRENCE ENRIGHT,** Duly Authorized Agent of **MIDDLEBURY EQUITY PARTNERS, LLC,** known to me, who acknowledged this instrument, by him signed, to be his free act and deed and the free act and deed of **MIDDLEBURY EQUITY PARTNERS, LLC.**

**Seal**

Before me, _____
Notary Public

Rosemary LeBlanc
Notary commission issued in Cheshire County
My commission expires: October 24, 2006
ROSEMARY LEBLANC
Notary Public - New Hampshire
My Commission Expires October 24, 2006

(Corporate Seal: MIDDLEBURY EQUITY PARTNERS, LLC. CORPORATE SEAL)

Prepared By: Lorene Wright
Bayview Loan Servicing, LLC
4425 Ponce De Leon Blvd., 5th Floor
Coral Gables, FL 33146

00355139176

NO SCHEDULE ATTACHED AT TIME OF RECORDING